## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF JOHN DOE 1 AND JOHN DOE 2, MINORS, | Civil Action No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| CUMBERLAND VALLEY SCHOOL DISTRICT, MARK A. BLANCHARD, ED.D., DR. JESSE RAWLS, JR., GREG RAUSCH, HAROLD "BUD" SHAFFNER; AND TIMOTHY FROELICH, | |
| Defendants. | |

## COMPLAINT IN CIVIL ACTION

AND NOW comes Plaintiff, Jane Doe, individually and as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, by and through her undersigned attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC, and Nicholas A. Miller, Esquire and Brenlove & Fuller, LLC, and file this Complaint in Civil Action, averring as follows:

## THE PLAINTIFF PARTIES

1.      Plaintiff, Jane Doe, individually and as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, is an adult resident of the Commonwealth of Pennsylvania who resides within the boundaries of the Cumberland Valley School District ("CVSD") which is in the Middle District of Pennsylvania.

2.      John Doe 1 is a minor resident of Pennsylvania and a student in his senior year at CVSD, and more specifically, Cumberland Valley High School ("CVHS").

3.    John Doe 1 is biracial; however, his physical appearance is predominantly African American.

4.    John Doe 2 is a minor resident of Pennsylvania and a student in his sophomore year at CVSD, and more specifically, CVHS.

5.    John Doe 2 is biracial; however, his physical appearance is predominantly African American.

6.    John Doe 1 is the older sibling of John Doe 2.

7.    Plaintiff is the parent and natural guardian of John Doe 1 and John Doe 2.

### **THE DEFENDANT PARTIES**

8.    CVSD is the local educational agency responsible for the administration and operation of a large rural and suburban public school district located in Central Pennsylvania with its principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

9.    CVSD educates more than 10,200 students across 13 schools in Hampden Township, Monroe Township, Middlesex Township, and Silver Spring Township in Cumberland County, Pennsylvania.

10.    CVSD is a political subdivision of the Commonwealth of Pennsylvania and therefore has the power to act under the authority of state law.

11.    CVHS is the only high school in CVSD and is located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

12.    CVHS consists of grades 9 through 12.

13.    Per a study done by U.S. News and World Report, in accordance with its stated ranking factors, CVHS ranks as No. 2,282 nationally, No. 81 among Pennsylvania schools, and No. 4 in the Harrisburg, Pennsylvania Metropolitan area.

14.    CVHS has an enrollment of approximately 3,000 students, of which 33.2% are classified as minorities and approximately 25% are economically disadvantaged.

15.    Even though approximately one-third of CVHS students are classified as minorities, only 4.4% of the student body is African American.

16.    Overall, the enrollment of students at CVSD is 4.1% African American.

17.    The CVSD School Board (the "Board") is the governing body of CVHS and is currently comprised of the following:

        a.   Defendant, Greg Raush, President ("Rausch");

        b.   Michelle Nestor, Vice President;

        c.   Jevon Ford, Assistant Board Secretary;

        d.   Atreia Sindri;

        e.   Matthew G. Barrick;

        f.   Andrew Clancy;

        g.   Mike Gossert;

        h.   Kelly Potteiger; and

        i.   Defendant, Harold "Bud" Shaffner ("Shaffner").

18.    The Board is responsible for the supervision, direction, control, and disciplining of the teachers, staff, associated personnel, and students throughout the CVSD, including but not limited to those at CVHS, for adhering to federal and state laws and regulations. and making and enforcing CVSD policies and procedures, whether written or unwritten, including immediately addressing and eliminating any bullying, harassment, and discrimination.

19.    Defendant, Mark A. Blanchard, Ed.D. ("Blanchard") is an adult resident of the Commonwealth of Pennsylvania with his principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

20.     Since 2023 Blanchard has been and presently is employed by CVSD as the Superintendent of CVSD.

21.     As the Superintendent, Blanchard is responsible for the supervision, direction, control, and disciplining of the staff and students throughout the CVSD, including but not limited to those at CVHS, for adhering to federal and state laws and regulations, making and enforcing CVSD's policies and procedures, whether written or unwritten, and ensuring a safe and nurturing environment for CVHS students, including immediately addressing and eliminating any bullying, harassment, and discrimination, and for the hiring and supervision of school principals, and other high-level staff.

22.     Defendant, Dr. Jesse Rawls, Jr., ("Rawls") is an adult resident of the Commonwealth of Pennsylvania with his principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

23.     At all times pertinent hereto, Rawls has been and is employed by CVSD as CVHS's principal for grades 10 through 12.

24.     In his position as principal, Rawls is responsible for the supervision, direction, control, training, and disciplining of the teachers, staff, associated personnel, and students at CVHS, for ensuring that CVHS adheres to CVSD's policies and procedures, whether written or unwritten, and ensuring a safe and nurturing environment for CVHS students, including immediately addressing and eliminating any bullying, harassment, and discrimination and for the hiring and supervision of school principals, and other high-level staff.

25.     Rausch is an adult resident of the Commonwealth of Pennsylvania with his principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

26.     In his position as President of the Board, Rausch is responsible for the supervision, direction, control, training, and disciplining of the teachers, staff, associated personnel, and students at CVHS, for ensuring that CVHS adheres to CVSD's policies and procedures, whether written or unwritten, and ensuring a safe and nurturing environment for CVHS students, including immediately addressing and eliminating any bullying, harassment, and discrimination and for the hiring and supervision of school principals, and other high-level staff.

27.     Shaffner is an adult resident of the Commonwealth of Pennsylvania with his principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania.

28.     In his position as a member of the Board, Shaffner is responsible for the supervision, direction, control, training, and disciplining of the teachers, staff, associated personnel, and students at CVHS, for ensuring that CVHS adheres to CVSD's policies and procedures, whether written or unwritten, and ensuring a safe and nurturing environment for CVHS students, including immediately addressing and eliminating any bullying, harassment, and discrimination and for the hiring and supervision of school principals, and other high-level staff.

29.     Defendant Timothy Froelich ("Froelich") has been and presently is employed by CVSD as the Assistant Director of Student Public Safety at CVHS with his principal place of business located at 6746 Carlisle Pike, Mechanicsburg, PA 17050 which is in the Middle District of Pennsylvania

30.     At all times pertinent hereto, Froelich was and is responsible for the individual safety of the students at CVSD.

31.     CVSD, Blanchard, Rawls, Rausch, Shaffner, and Froelich will sometimes hereinafter be collectively referred to as "Defendants."

## JURISDICTION AND VENUE

32.     Because a substantial part of this action arises under the law of the United States and involves one or more federal questions, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

33.     Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391, in that all the claims set forth herein arose in the Middle District of Pennsylvania and Defendants reside and/or maintain their principal places of business in the Middle District of Pennsylvania.

## BACKGROUND FACTS

### *CVSD HAS A PERVASIVE CLIMATE OF BULLYING, HARASSMENT, AND CONSISTENTLY MAINTAINS A RACIALLY HOSTILE ENVIRONMENT*

34.     A racially hostile environment is one where an individual or group experiences unwelcome conduct based on their race, and which is severe or pervasive enough to create an intimidating, hostile, or offensive atmosphere.

35.     In schools, it is typically when students of color are bullied, harassed, or discriminated against by peers or staff.

36.     A racially hostile environment can have serious consequences for individuals, particularly young individuals such as John Doe 1 and John Doe 2.

37.     A racially hostile environment in a school or community can lead to psychological distress, decreased productivity, and social isolation.

38.     It also causes a climate of fear and mistrust, making it difficult for students of color to learn and thus can have lifelong impacts on such persons.

39.     On its website, CVSD claims that it maintains and follows the following policy against discrimination:

> "Cumberland Valley Schools District prohibits discrimination, including sexual harassment, on the basis of race, color, age, creed,

religion, sex, sexual orientation, ancestry, national origin, marital status, parenting status, pregnancy or handicap/disability in its activities, programs, or employment practices."

40.    In its Policy Manual, Section 249 CVSD claims that it maintains and follows the following policy against student bullying:

"The Board is committed to providing a safe, positive learning environment for District students.  The Board recognizes that bullying creates an atmosphere of fear and intimidation, detracts from the safe environment for student learning, and may lead to more serious violence.  Therefore, the Board prohibits bullying by district students."

41.    For the reasons set forth herein, those policies are merely lip service, as the worst transgressors of CVSD's policies are the ones who should be policing and enforcing them, i.e.: CVSD's Board, faculty, administration, and staff.

42.    CVSD has a long history of deliberate indifference to and/or or actively condoning, racial discrimination, bigotry, bullying, and harassing behaviors, and general intolerance that have gone unchecked and currently run rampant within the hallways, classrooms, and extra-curricular programs of its educational system.

43.    One thing is perfectly clear, the toxic rot of racial discrimination, bigotry, bullying and harassing behaviors, and general intolerance in CVSD starts at the head with the Board, and in particular, Rausch and Shaffner who not only hold such beliefs but makes sure that CVSD is molded in their image.

44.    In fact, Shaffner has had *de facto* control over the Board and CVSD for decades, and his control has been absolute.

45.    Plaintiff believes that the other members of the Board, including Rausch, as well as CVSD's employees and personnel are forced to and agree to yield to Shaffner's individual whims, or they are ostracized and/or pushed out.

46.    During his time on the Board, Rausch has ensured that CVSD adheres to his racist and bigoted ideals.

47.    During his decades on the Board, Shaffner has ensured that CVSD adheres to his racist and bigoted ideals.

48.    The collective incidents of racial discrimination, bullying, and harassment have created a racially hostile, pro-bullying, and intolerant environment which is systemic throughout the Board, CVSD's educators, CVSD's administration and personnel, CVSD's coaches, CVSD's students, and many of CVSD's parents and alumni.

49.    In fact, CVSD has long been known and referred to as the "White Shore."

50.    In an interview he gave in October 2019, Dr. David E. Christopher, who was the Superintendent of CVSD at the time, acknowledged that:

    a.    There was racial division and intolerance in the CVSD;

    b.    He vowed to rid the CVSD of that racial division and intolerance;

    c.    Ridding the CVSD of that racial division and intolerance required a collaboration with faculty, parents, and most importantly, students;

    d.    Even though he had only been on the job for less than two months, he had dealt with an outcry from parents and students over troubling reports that students of color were being targeted with racial slurs, hostility and harassment by white classmates;

    e.    Although CVSD had a zero-tolerance policy, the problem is we can say zero tolerance but then what do we do when it happens?;

    f.    We have to ensure that we have an educational component with any disciplinary action that happens in the high school;

    g.    In recent weeks, CVSD had come under scrutiny as several parents had addressed the school board with concerns that their children were being racially harassed by white students, and the district had failed to adequately address or discipline offenders;

    h.    We have significant work to do in terms of student training and faculty training, but it really is more about awareness training;

    i.      While the CVSD has had a historic belief that the racial issue has not been as big of a deal as has been made out, that outlook no longer works; and

    j.      For the individual being harassed it is the biggest deal.

51.    Plaintiff believes that CVSD failed to develop and implement any programs that were designed to create a collaboration between faculty, parents, and students to combat and eradicate bullying, racial division, and intolerance, failed to develop and implement necessary and appropriate educational and training programs, and failed to administer necessary and appropriate disciplinary policies for offenders that were consistent with Dr. Christopher's admissions and suggestions.

52.    Following an audit his office conducted of the CVSD, in June 2020 Auditor General, Eugene DePasquale announced that:

    a.      Pennsylvania's anti-bullying law should be strengthened to ensure that school districts are reporting all instances of bullying;

    b.      Bullying is very harmful to students and can have lifelong implications;

    c.      The audit found that CVSD had reported only two instances of bullying in the past five school years; and

    d.      It's difficult – if not impossible – to make conclusions about the pervasiveness of bulling if school districts are underreporting it, as appears to be the case.

53.    Following Mr. DePasquale's announcement, CVSD failed to develop and implement any programs that were designed to create a collaboration between faculty, parents, and students to combat and eradicate bullying, racial division, and intolerance, failed to develop and implement necessary and appropriate educational and training programs, and failed to administer necessary and appropriate disciplinary policies for offenders that were consistent with Dr. Christopher's admissions and suggestions.

54.     The acknowledgements and announcements by Dr. Christopher and Mr. DePasquale clearly establish that bullying, racial division, and intolerance have been and continue to be prevalent at CVSD and CVSD has a history of failing to report all instances of bullying.

55.     Plaintiffs also believe that in the years since the acknowledgements and announcements by Dr. Christopher and Mr. DePasquale, CVSD has still failed to appropriately address, and attempt to eradicate, bullying, racial division, and intolerance in CVSD

56.     Recent examples of that racial discrimination, bullying, and harassment include, but are not limited to:

a.     In the summer of 2016, Shaffner, in furtherance of his own interests in gaining favors, forced the Board to allow President, Donald J. Trump to host a rally at CVHS.  This was improper for a number of reasons, being that:

i.     President Trump, even at that time, had a long history of mocking and name-calling his political opponents, decades of allegations of sexual assault and harassment against numerous women, and making racially disparaging, anti-immigrant, misogynistic, and otherwise bullying and harassing comments,[1] and it should be noted that:

ii.     If any CVSD student had spoken the same way that President Trump did while he was at CVHS, that student would have been in violation of CVSD's policies against bullying and discrimination and punished; and

iii.     It let the CVSD students, faculty, staff, parents, coaches, and community know that CVSD condoned such behaviors and that CVHS was open for business for the bullying, harassment, and discrimination of its students.

b.     In 2019, multiple sources claimed that a CVHS varsity football coach yelled a racial slur at a student while playing Harrisburg High School, which is the only school CVHS's varsity football team plays where the enrollment is predominantly African American.

c.     In September of 2019, the then CVSD Superintendent, Dr. Christopher, acknowledged that bullying, racial intolerance, and racial hostility were an issue in CVSD schools and promised improvements.

---

[1] Note, that the inclusion of this example is apolitical.  It is not meant to infer any allegations upon any political party or political belief but is simply looking at President Trump's past statements, as well as accusations against him.

d.      In October of 2019, Dr. Christopher again openly acknowledged that bullying, racial intolerance, and racial hostility were prevalent within CVSD amid troubling reports that students of color were being targeted with racial slurs, hostility, and harassment by white classmates saying, "[w]e have to get kids to decide that this isn't ok," and saying that "I do think that we have significant work to do in terms of student training and faculty training," in relations racial hostility and bullying awareness training.

e.      Since Rawls was hired as the principal, there have been numerous instances of physical encounters between CVHS faculty and minority students, however videos of those incidents are blurred "for reasons of privacy," so that it is impossible to determine what events actually transpired. No similar altercations between faculty and white students are known to have occurred in CVSD facilities. Not even the parents of the students involved have been privy to the unredacted videos that would show, without a doubt, that their children had been physically assaulted by CVHS faculty and staff.[2]

f.      On December 7, 2023, a teacher at CVSD's Mountain View Middle School used a flat iron to straighten the hair of an interracial minor, both in front of his class and against his will, while another teacher took pictures with her personal cell phone. Afterwards he was openly laughed at and mocked by both teachers and students due to the physical and emotional battery he endured at the hands of his educators.

g.      Maulik Pancholy, who is an openly gay actor and author, was scheduled to give a presentation on diversity, inclusion, and anti-bullying to the students at Mountain View Middle School on May 22, 2023. However, Shaffner had the Board cancel Mr. Pancholy's presentation via a motion Shaffner brought from the floor during an April 17, 2024 Board meeting.[3] Shaffner made no attempt to hide why he did not want Mr. Pancholy to speak, stating that it was because Mr. Pancholy was proud of being gay and that Shaffner did not "think that should be imposed upon our students – at any age." Rausch voted in favor of canceling Mr. Pancholy's presentation.

h.      In October 2024, a 5th grade student at Green Ridge Elementary School, who is Hispanic, was made to kneel on the ground in front of his classmates because he unintentionally dozed off in class. Not only was he forced to kneel until the pain in his knees became unbearable, but none of the white students in his class had ever been subjected to corporal punishment, which is illegal, for similar or worse behavior.

---

[2] Rawls is an African American. However, it is believed that he was only hired to shield CVSD and the Board from allegations of racism and bigotry. In fact, Rawls has a history of questionably flexible ethics, even the kind that would allow a racially hostile environment and bullying to continue unabated in his school. For instance, in 2016, Rawls' wife, while he was a vice-principal at a different school district, instigated a physical altercation with a student while on a school bus. Rawls, through his position in that school's administration, intentionally withheld from his own school board the video of the incident in an effort to cover-up of the incident. Eventually, after that school board expended $200,000 to $250,000 of taxpayer funds in litigation, they were able to obtain the video and released a copy of it to the public that was so heavily redacted it was impossible to determine what occurred. There can be little doubt that Rawls learned from that incident that the "more blur, the better," in allowing and perpetuating the heinous environment at CVHS.
[3] The vote from the floor was anything but spontaneous as Shaffner had orchestrated it from a secret meeting of the Board that was held in violation of the Pennsylvania's Sunshine Act.

     i.     Additionally in October 2024, two minor girls tried to take their own lives as a result of the intense and prolonged bullying they had endured from their peers to which the CVSD faculty and staff willfully turned a blind eye. One of those instances was the result of racial intimidation, harassment, and bullying of a girl who is mixed-race.

     j.     At a June 17, 2024 Board meeting, Blanchard actively spoke out against Pennsylvania's attempts to create an educational funding bill that would ensure equal opportunity to education for minority and economically disadvantaged students in accordance with the Pennsylvania Commonwealth Court's ruling in *William Penn Sch. Dist. v. Pa. Dep't of Educ*., 587 M.D. 2014 (Pa. Cmmw. Ct. Apr. 17, 2023).

     k.     From 2023 to 2024, the only African American on the CVHS cheerleading team was subjected to bullying, hazing, and racial discrimination, including, but not limited to:

       i.     Being made to wait until all the white cheerleaders were on the bus and seated to be allowed to board the bus at football games;

       ii.     Having awards taken away from her and not given back while white cheerleaders either did not have rewards taken away or had their awards given back under similar circumstances;

       iii.     Being the only cheerleader that was taken into a hotel room while on a trip to Florida for a cheerleading trip and hazed for approximately two hours, and which included being made to pretend to be walked around at a white cheerleader's pet.

57.     Despite all evidence to the contrary, Blanchard has repeatedly and unbelievably denied that CVSD has had any issues with racial intimidation, discrimination, harassment, or bullying.

58.     Blanchard had previously been the Assistant Superintendent of CVSD under Dr. Christopher and, for all appearances, seemed to adhere to Dr. Christopher's view on ridding CVSD of racism and bullying and the importance of caring for the health and well-being of CVSD's student population.

59.     However, Blanchard was selected through a "kangaroo court" setting that Shaffner set into motion and solely controlled and conducted and Rausch tacitly condoned and/or openly approved.

60.     Shaffner either knew that Blanchard's demeanor under Dr. Christopher was a façade or that he could coerce and bully Blanchard into perpetuating Shaffner's individual agendas of racism, bigotry, harassment, discrimination, and he and his family's efforts to financial gain.

61.     In ensuring Blanchard's selection as Superintendent, Shaffner ensured that he would have, or could create, a warrior for Shaffner's world view instead of one who is concerned with his actual obligations, which is to ensure a safe learning environment for CVSD's students.

62.     Since being selected as Superintendent of CVSD, Blanchard has been openly hostile, pugnacious, and gaslighting to anyone who raises any concerns as to the racially hostile environment and bullying within CVSD's schools, even though he was part of the previous administration that fully admitted CVSD had a problem with racial intolerance and bullying.

63.     Blanchard, Rawls, Rausch, and Shaffner have knowingly and/or indifferently allowed the racially hostile environment at CVSD and CVHS, respectively, to continue unabated through each of their actions and omissions.

### *John Doe 1 and John Doe 2's CVSD Experience*

64.     Boiled down to its core, this is a story of two brothers and how the racially hostile environment within CVSD has harmed them in different ways due to socialized role expectations, observational learning, and coping mechanisms.

65.     Older siblings will often become more confrontational and assertive in the face of discrimination, adopting an "angry fighter" role.

66.     Younger siblings often observe the negative consequences their older sibling endured through being confrontational in the face of discrimination and often become more docile and quieter in the face of hostility and discrimination.

67.      This is the exact way in which John Doe 1 and John Doe 2 have responded to the hostility and discrimination they have suffered, i.e.: John Doe 1 angrily confronts his peers and

CVSD staff over their discriminatory behavior while John Doe 2 passively endures that same discrimination thinking that nothing he could ever do would change the situation.

68.     John Doe 1 first experienced racial discrimination and bullying at CVSD in elementary school.

69.     Initially, the racial discrimination and bullying was periodic, but it gradually got more frequent and severe.

70.     For instance, on his first day of high school where, upon boarding the bus, he and his friend were singled out for being African American and made to sit at the front of the bus even though John Doe 1 had no history of causing problems on the bus.

71.     None of John Doe 1's white peers were made to move seats so that the bus driver, who was white, could monitor their behavior.

72.     At the time, John Doe 1 had a white girlfriend.

73.     That bus driver went out of her way to tell John Doe 1's white girlfriend that "you are too good to be with someone like John Doe 1," apparently because he was Black.

74.     Jane Doe reported the bus driver's behavior to CVSD, but nothing was ever done about it.

75.     During a math class in his sophomore year, John Doe 1's teacher, Jennifer Gutzweiler, held up a picture of a monkey and compared John Doe 1's classmate, who was African American, to the picture and made similar derogatory comments about John Doe 1, to the laughter of his peers, who were being emboldened by this and other instances to further the racially discriminatory environment at CVSD.

76.     That event caused John Doe 1 severe emotional trauma and severely impacted his behavior and learning experience

77.     CVSD never informed Jane Doe of that incident.

78.    In fact, Jane Doe did not learn of the incident until two years later when she reviewed records CVSD produced in response to a record request she submitted.

79.    John Doe 1 was moved to another math class allegedly because of the "negative student-teacher relationship between him and Jennifer Gutzweiler; however, the emotional trauma of the event had already impacted John Doe 1's behavior and learning experience.

80.    A cycle was born in which John Doe 1 became angry and confrontational for being treated differently due to being African American and, as a result and henceforth CVSD and staff treated John Doe 1 as though he was just an "angry Black youth."

81.    John Doe 1 also suffers from multiple learning disabilities.

82.    Instead of CVSD providing John Doe 1 with assistance through a proper individualized education program ("IEP") or coordinating proper educational assistance with Jane Doe, CVSD just kept having John Doe 1 repeat the same courses again and again while white students with learning deficiencies or with the same neurodivergent disorders as John Doe 1 were receiving educational assistance, including IEPs that were properly tailored to their individual needs.

83.    It cannot be clearer that the sole reason John Doe 1 has been essentially "discarded" by CVSD is because he is African American and because he aggressively battled against the racial discrimination and hostility that he was forced to endure throughout each school year.

84.    Other instances of disparate and racially discriminatory conduct that John Doe 1 has suffered while at CVSD includes, but is not limited to:

    a.   In October of 2021, John Doe 1's math teacher noted that his math comprehension was well below normal. While many white students received additional support through the school, John Doe 1 did not, and Jane Doe was never even notified of the math teacher's concerns regarding John Doe 1's math comprehension;

    b.   During the 2021-2022, John Doe 1's Science teacher, Mr. Pelow read off in front f the class a list of John Doe 1'salleged behavioral issues and misconduct;

c.  On March 13, 2022, one of John Doe 1's 9th grade assistant principals emailed a CVSD school counselor and noted that, in 10th grade John Doe 1 should be separated from his friends, who were also African American;

d.  In the Spring of 2022, several minorities would have their backpacks searched, while the same did not happen to white students.  When Jane Doe asked administrators why the book bags that were being searched were predominantly those of minority students she was never given a response, let alone a reasonable justification for the practice;

e.  On or around March 26, 2022, a white CVSD student sent a text picture to John Doe 2 of the white student holding a gun and stating that he would beat John Doe 2's "everloving ass."  John Doe 1 was suspended for confronting the white student about the photo while the white student received no punishment for sending a picture of a gun and a threatening text to an African American student.  Instead, the gun picture and threat were just written off as "boys will be boys;"

f.  However, in September of 2022, John Doe 1 expressed his concern on social media, outside of school, that he believed it would be easy to perpetrate a school shooting at CVHS, John Doe 1 was suspended from school and was required to have a psychological evaluation performed by school personnel;

g.  On September 1, 2023, John Doe 1, in trying to prevent an altercation, expressed concerns to an assistant principal about negative comments being made about him, instead of investigating the issue, the assistant principal gave John Doe 1 detention for being in the hallway when she felt he should not have been.  During that same time period, there were numerous white students in the hallway, none of whom are believed to have been disciplined;

h.  On September 9, 2023 after trying to discuss a dispute with his peers, Froelich, identifying John Doe 1 as a threat only because he was Black and upset – placed John Doe 1 in an illegal and criminal restraint hold.  The security officer then walked away from John Doe 1 without any post-restraint follow-up being performed, such as filling out an incident report or having John Doe 1 report to the school nurse for an evaluation.  John Doe 1 was given 3 days suspension for the incident in which he was attacked by a school official and was cited by Silver Spring Township for disorderly conduct despite video evidence to the contrary.  Plaintiff believes that no white CVHS student has been similarly disciplined even in the face of far worse conduct, including the terroristic threats identified above;

i.  In late November of 2023, John Doe 1 was questioned about an incident at a female student's house to "ensure the safety of the student at school."  John Doe 1 was not a party to the incident but was assumed to have been because he was Black.  Further, CVSD was concerned about the safety of the white student but took no action when a white student sent threatening pictures of a gun to a Black student, as referenced above;

     j.    John Doe 1 has repeatedly been suspended from school for conduct similar to his white peers while they have received less, or no, suspension time; and

     k.    John Doe 1 was identified as a student who could benefit from "Experiential Learning," which is a program at CVHS where students could work on their "anger management. All of the CVHS students in the Experiential Learning program are believed to be minorities, who make up a small fraction of the CVSD population.

85.    While John Doe 1 has become increasingly aggressive towards the racially hostile environment at CVSD, John Doe 2 has become more docile and defeated.

86.    John Doe 2's friends are white and repeatedly refer to his race in a derogatory fashion, which John Doe 2 just accepts.

87.    While John Doe 2 has gotten punished for being in fights at school, those fights were related to the racial discrimination, bullying, and harassment that was directed towards him.

88.    When John Doe 2 saw that fighting would not change anything, he became emotionally defeated and he goes to school each day knowing that he will be the target of racial discrimination and hostility by his peers and CVSD faculty and staff.

89.    As an example, for two weeks a white student kept touching John Doe 2's hair.

90.    For an African American, that simple act is one of dehumanization and objectification that harkens back to a history of Black people being treated as an object of curiosity rather than as a human being.

91.    While John Doe 2 repeatedly asked the white student to stop touching his hair, the white student ignored his polite requests and kept touching John Doe 2's hair, which demonstrated that white peers believe they can treat the Black students at CVSD however they want.

92.    That unwanted and repeated touching of John Doe 2's hair constitutes an ongoing battery, and when John Doe 2 finally did complain, the white student was not disciplined for his actions.

93.     Jane Doe does not believe that any of the perpetrators referenced above were ever disciplined for their actions.

94.     While one thing is clear, even though the racially hostile, discriminatory, and bullying environment at CVSD has affected John Doe 1 and John Doe 2 differently, it has still caused them great and irreparable harm.

95.     As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, including the racial discrimination, harassment, and bullying, they experienced due to the racially hostile environment, John Doe 1 and John Doe 2 have suffered, and will continue to suffer, the following severe, serious, and potentially permanent injuries:

    a.     Anxiety;

    b.     Anger;

    c.     Fear;

    d.     Depression;

    e.     Headaches;

    f.     Trouble Sleeping;

    g.     PTSD;

    h.     Low self-esteem;

    i.     Fear of retaliation;

    j.     Feeling disconnected from others in the community solely on the basis of their race; and

    k.     Other severe, serious, and potentially permanent injuries as will be proven at trial.

96.     As a direct, proximate, factual, and legal result of the racially hostile environment within CVSD, and the racial discrimination they experienced, John Doe 1 and John Doe 2 have

been denied the same educational and other benefits and the education experience to which they are entitled, and their white counterparts receive.

97.     As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, including the racial discrimination, harassment, bullying, and hazing John Doe 1 and John Doe 2 have suffered, and will continue to suffer, the following severe, serious, and potentially permanent damages, losses, and harm:

  a. They have suffered and will continue to suffer severe physical pain, anxiety, depression, embarrassment, humiliation, emotional distress, mental anguish, inconvenience, and a loss of life's pleasures;

  b. They have been and/or will continue to be obliged to receive and undergo medical attention, care, and treatment, and has spent and will continue to spend significant sums of money to restore her health;

  c. Their ability to perform activities of daily living have been severely impaired;

  d. Their general health, strength, and vitality have been greatly impaired, thereby depriving them of the normal joys of life; and

  e. Other severe, serious, and potentially permanent damages, losses, and harm as will be proven at trial.

98.     As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, including the racial discrimination, harassment, and bullying that John Doe 1 and John Doe 2 have suffered, Plaintiff has suffered, and will continue to suffer, the following severe, serious, and potentially permanent injuries:

  a. Anxiety;

  b. Anger;

  c. Fear;

  d. Headaches;

  e. Trouble Sleeping;

19

      f.      Fear of retaliation;

      g.     A deprivation of their constitutional right to free speech;

      h.     Feeling disconnected from others in the community solely on the basis of their race; and

      i.      Other severe, serious, and potentially permanent injuries as will be proven at trial.

99.     As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, including the racial discrimination, harassment, and bullying that John Doe 1 and John Doe 2 have suffered, Plaintiff has suffered, and will continue to suffer, the following severe, serious, and potentially permanent injuries:

      a.     She has suffered and will continue to suffer severe physical pain, anxiety, depression, embarrassment, humiliation, emotional distress, mental anguish, inconvenience, and a loss of life's pleasures;

      b.     She has been and/or will continue to be obliged to obtain medical attention, care, and treatment for John Doe 1 and John Doe 2 and have spent and will continue to spend significant sums of money to restore her health;

      c.     Her ability to perform their activities of daily living has been severely impaired;

      d.     Her general health, strength, and vitality have been greatly impaired, thereby depriving them of the normal joys of life; and

      e.     Other severe, serious, and potentially permanent damages, losses, and harm as will be proven at trial.

## COUNT I

### PLAINTIFF ON BEHALF OF JOHN DOE 1 AND JOHN DOE 2 vs. DEFENDANT, CUMBERLAND VALLEY SCHOOL DISTRICT

### <u>VIOLATION OF TITLE VI (42 U.S.C. § 2000(d))</u>

100.    The foregoing paragraphs are incorporated herein by reference as though fully set forth at length.

101.    Title VI of the Civil Rights Acts of 1964 states that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d).

102.    The existence of a racially hostile educational environment is a question of fact that depends upon the severity, pervasiveness, and persistence of racial harassment.  59 Fed. Reg. 11448.

103.    An educational institution has the duty to provide a nondiscriminatory environment that is conducive to learning.  59 Fed. Reg. 11448.

104.    In addition to the curriculum, students learn about many aspects of human life and interaction from school.

105.    The type of environment that is tolerated or encouraged by or at school can therefore send a particularly strong sign to and serve as an influential lesson for its students.

106.    At all times pertinent hereto, CVSD, and therefore CVHS, received federal funds.

107.    As succinctly stated within the 9th Circuit:

> "It does not take an educational psychologist to conclude that…being shamed and humiliated on the basis of one's race, and having school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as (their) white counterparts.  This is especially so when we also consider, in accordance with the agency's interpretation, the victim's age.  Ninth grade is a sensitive time in a child's life.  It is the beginning of high school, when an adolescent is highly impressionable and is making decisions about education that will affect the course of her life."

*Monteiro v. Tempe Union High Sch. Dist.,* 158 F.3d 1022, 1034 (9th Cir. 1998).

108.    The racially hostile environment at CVSD was a direct result of the knowingly intentional acts and deliberate indifference of CVSD, the Board, and CVSD faculty, staff, and students.

109.    Blanchard, Rawls, Rausch, and Shaffner in their respective positions with CVSD, had affirmative duties to prevent a racially hostile environment within CVSD and CVHS but failed to do so as a result of their intentional acts and deliberate indifference.

110.    Blanchard, Rawls, Rausch, and Shaffner in their respective positions with CVSD, have affirmative duties to prevent racial discrimination, harassment, and bullying of the students in their care and/or for whom they are responsible, but instead directly participated in, condoned, or were deliberately indifferent to the racial discrimination, harassment, and bullying that John Doe 1 and John Doe 2 experienced.

111.    The actions and omissions of Blanchard, Rawls, Rausch, and Shaffner as identified above, are directly attributable to CVSD.

112.    As a direct, proximate, factual, and legal result of the racially hostile environment and racially discriminatory, harassing, and bullying that John Doe 1 and John Doe 2 have suffered the aforesaid severe, serious, and potentially permanent injuries, damages, losses, and harm.

113.    CVSD's actions and omissions, including the racial discrimination, harassment, and bullying that John Doe 1 and John Doe 2 have suffered, was knowing, intentional, willful, malicious, and reckless, and with malice and/or with an utter wanton and reckless disregard for their  rights under federal law and warrants the imposition of sanctions in favor of Plaintiff in her capacity as parent and natural guardian of John Doe 1 and John Doe 2.

WHEREFORE, Plaintiff, Jane Doe as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, demands judgment in her favor and against Defendant, Cumberland Valley School

District, together with compensatory damages, punitive damages, interest, attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems appropriate.

## COUNT II

**PLAINTIFF ON BEHALF OF JOHN DOE 1 AND JOHN DOE 2 vs. DEFENDANTS, CUMBERLAND VALLEY SCHOOL DISTRICT, MARK A. BLANCHARD, ED.D., DR. JESSE RAWLS, JR., GREG RAUSCH, AND HAROLD "BUD" SHAFFNER**

**42 U.S.C. §1983/VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT**

114.    The foregoing paragraphs are incorporated herein by reference as though fully set forth at length.

115.    The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

116.    CVSD, as a public educational institution, is subject to the Equal Protection Clause of the Fourteenth Amendment.

117.    CVSD, Blanchard, Rawls, Rausch, and Shaffner participated in, condoned, or were deliberately indifferent to the racially hostile environment within CVSD as well as the racial discrimination experienced by John Doe 1 and John Doe 2.

118.    CVSD, Blanchard, Rawls, Rausch, and Shaffner by participating in, condoning, or being deliberately indifferent to the racially hostile environment within CVSD and the racial discrimination experienced by John Doe 1 and John Doe 2 were at all times, acting both in their individual capacities and under color of law.

119.    John Doe 1 and John Doe 2 are both members of a protected class as they are African American.

120.    By being subjected to the racially hostile environment that is rampant within CVSD as well as the racial discrimination, harassment, and bullying they personally experienced, John Doe 1 and John Doe 2 have been denied:

   a. An equal opportunity to access educational resources and opportunities as that of their white peers;

   b. Has been subjected to an intimidating, hostile, and offensive educational environment; and

   c. Have been denied that same feeling of safety and comfort as that of their white peers while attending school.

121.    CVSD, Blanchard, Rawls, Rausch, and Shaffner's aforesaid actions and omissions were knowing, intentional, willful, malicious, and reckless, they were made with a wanton disregard for John Doe 1's and John Doe 2's rights under federal law which have caused John Doe 1 and John Doe 2 to suffer the aforesaid severe, serious, and potentially permanent injuries, damages, losses, and harm and, thus, they warrant the imposition of punitive damages in favor of John Doe 1 and John Doe 2 and against CVSD, Blanchard, Rawls, Rausch, and Shaffner.

122.    Under the circumstances and under principles of respondeat superior and ostensible agency, CVSD is vicariously liable to John Doe 1 and John Doe 2 for the actions and omissions of the other Defendants that were made under color of law.

WHEREFORE, Plaintiff, Jane Doe as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, demands judgment in her favor and against Defendants, Cumberland Valley School District, Mark A. Blanchard, Ed.D., Dr. Jesse Rawls, Jr., Greg Rausch, and Harold "Bud" Shaffner, together with compensatory damages, punitive damages, interest, attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems appropriate.

## COUNT III

## PLAINTIFF ON BEHALF OF JOHN DOE 1 v. DEFENDANT, TIMOTHY FROELICH

## UNLAWFUL RESTRAINT/FALSE IMPRISONMENT

123.    The foregoing paragraphs are incorporated herein by reference as though fully set forth at length.

124.    As described above, Froelich placed John Doe 1 in a physical restraint that was unnecessary, criminal, and that he had no legal justification or authority to use.

125.    In restraining John Doe 1, Froelich knowingly and intentionally restrained and confined John Doe 1.

126.    Even if the physical restraint of John Doe 1 had been necessary, which is was not, the hold used carried with it a risk of serious bodily injury.

127.    At all times pertinent hereto, Froelich knew, or should have known that the hold he used on John Doe 1 could have seriously injured John Doe 1.

128.    Despite possessing that knowledge, Froelich knowingly and willingly placed John Doe 1 in that hold irrespective of the risk.

129.    Froelich acted with malice, or with a wanton and reckless disregard for the health, safety and well-being of John Doe 1 as evidenced by Froelich's failure to report the incident, his failure to fill out an incident report, and his failure to have John Doe 1 examined by a health care professional.

WHEREFORE, Plaintiff, Jane Doe as Parent and Natural Guardian of John Doe 1, a minor demands judgment in her favor and against Defendant, Timothy Froelich, together with compensatory damages, punitive damages, interest, costs, and such other relief as this Court deems appropriate.

## COUNT IV

**PLAINTIFF ON BEHALF OF JOHN DOE 1 AND JOHN DOE 2 vs. ALL DEFENDANTS**

**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

130.    The foregoing paragraphs are incorporated herein by reference as though fully set forth at length.

131.    By and through their actions, omissions, and indifference as aforesaid, each of the Defendants has acted in an extreme and outrageous manner.

132.    As a result of Defendants' individual and collective actions, omissions, and indifference as aforesaid, which were extreme and outrageous, Plaintiff, John Doe 1 and John Doe 2 have suffered, and continue to suffer, severe emotional distress.

133.    Defendants' individual and collective actions, omissions, and indifference were under the color of law and/or were knowing, intentional, willful, malicious, and reckless and/or were with a wanton disregard for John Doe 1's and John Doe 2's rights under federal law and their health, safety, and well-being and have caused John Doe 1 and John Doe 2 to suffer, and continue to suffer, the aforesaid severe, serious, and potentially permanent injuries, damages, losses, and harm and warrant the imposition of punitive damages in favor of John Doe 1 and John Doe 2 and against Defendants.

134.    Under the circumstances and under principles of respondeat superior and ostensible agency, CVSD is vicariously liable to John Doe 1 and John Doe 2 for the actions of each of the individual Defendants to this Count that were made under color of law.

WHEREFORE, Plaintiff, Jane Doe as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, demands judgment in her favor and against Defendants, Cumberland Valley School District, Mark A. Blanchard, Ed.D., Dr. Jesse Rawls, Jr., Greg Rausch, Harold "Bud" Shaffner,

and Timothy Froelich, together with compensatory damages, punitive damages, interest, costs, and such other relief as this Court deems appropriate.

**COUNT V**

**PLAINTIFF, INDIVIDUALLY ON BEHALF OF JOHN DOE 1 AND JOHN DOE 2 vs. ALL DEFENDANTS**

**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**

135.    The foregoing paragraphs are incorporated herein by reference as though fully set forth at length.

136.    By allowing the racially discriminatory treatment, harassment, and bullying of John Doe 1 and John Doe 2 to occur, each of the Defendants breached the duties they owed to John Doe 1 and John Doe 2.

137.    By and through their actions, omissions, and indifference as aforesaid, Defendants have each acted in an extreme and outrageous manner.

138.    Plaintiff, as the parent of John Doe 1 and John Doe 2, has been a direct observational witness to the racial discrimination her sons have endured and has experienced physical manifestations of the extreme emotional harm she has endured.

139.    As a result of the individual and collective actions, omissions, and indifference of Defendants which were extreme and outrageous, Plaintiff, John Doe 1 and John Doe 2 have, and continue to suffer, severe emotional distress.

140.    Defendants' individual and collective actions, omissions, and indifference were under the color of law and/or were knowing, intentional, willful, malicious, and reckless and/or were with a wanton disregard for John Doe 1's and John Doe 2's rights under federal law and their health, safety, and well-being and have caused John Doe 1 and John Doe 2 to suffer, and continue to suffer, the aforesaid severe, serious, and potentially permanent injuries, damages, losses, and

harm and warrant the imposition of punitive damages in favor of John Doe 1 and John Doe 2 and against Defendants.

141.    Under the circumstances and under principles of respondeat superior and ostensible agency, CVSD is vicariously liable to John Doe 1 and John Doe 2 for the actions of each of the individual Defendants to this Count that were made under color of law.

WHEREFORE, Plaintiff, Jane Doe, Individually and as Parent and Natural Guardian of John Doe 1 and John Doe 2, minors, demands judgment in her favor and against Defendants, Cumberland Valley School District, Mark A. Blanchard, Ed.D., Dr. Jesse Rawls, Jr., Greg Rausch, Harold "Bud" Shaffner, and Timothy Froelich, together with compensatory damages, punitive damages, interest, costs, and such other relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Respectfully submitted,

**THE FARNETH LAW GROUP, LLC**

January 24, 2025

By:s/*George R. Farneth II*
George R. Farneth II, Esquire
445 Fort Pitt Blvd., Suite 160
Pittsburgh, PA 15219
Tel: (412) 863-7092
Fax: (412) 586-4713
Email: grf@farnethlaw.com
PA ID #53914
WV ID #10749

**BRENLOVE & FULLER, LLC**

By:*s/Nicholas A. Miller*
Nicholas A. Miller, Esq.
401 Washington Avenue
Bridgeville, PA 15017

412-221-0640 x 112
nmiller@brenlovefuller.com

Attorneys for Plaintiffs