## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, individually and as parent and natural guardian of John Doe 1 and John Doe 2, minors, | : : : : | Civil No. 1:25-CV-00158 |
| Plaintiff, | : : | |
| v. | : : | |
| CUMBERLAND VALLEY SCHOOL DISTRICT, *et al.*, | : : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss and strike ("motion to dismiss") filed by Defendants Cumberland Valley School District ("CVSD"), Dr. Mark A. Blanchard ("Blanchard"), Dr. Jesse Rawls, Jr. ("Rawls"), Greg Rausch ("Rausch"), Harold "Bud" Shaffner ("Shaffner"), and Timothy Froelich ("Froelich") (collectively, "Defendants"). (Doc. 23.) Defendants allege that Plaintiff Jane Doe ("Doe") fails to state a claim upon which relief may be granted in her amended complaint. (Doc. 23; Doc. 27, pp. 12–47.)[1] Doe alleges that her two children, John Doe 1 and John Doe 2, suffered a hostile educational environment and were racially discriminated against as students at CVSD. (Doc. 19, ¶¶ 34–169.) For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Doe alleges that CVSD has a history and custom of failing to address complaints of racial discrimination and harassment.  (Doc. 19, ¶¶ 34–66.)  She then alleges that her sons, John Doe 1 and John Doe 2, have suffered specific instances of discrimination and harassment as CVSD students.  (*Id.* ¶¶ 67–102.)

### A. Doe alleges that CVSD administrators have long failed to remedy persistent racial discrimination and harassment.

Blanchard is the superintendent of CVSD.  (Doc. 19, ¶ 20.)  Rawls is the principal for grades ten through twelve at Cumberland Valley High School ("CVHS"), which is part of CVSD.  (*Id.* ¶¶ 11, 23.)  Rausch is the president of the CVSD School Board, while Shaffner is a member of the School Board.  (*Id.* ¶ 17.)  Blanchard, Rawls, Rausch, and Shaffner are each responsible for supervising and disciplining teachers, staff, and students at CVSD as well as ensuring CVSD's compliance with its own policies.  (*Id.* ¶¶ 18–28.)

CVSD's policies prohibit racial discrimination and bullying, but Doe alleges that CVSD and its officials ignore them.  (*Id.* ¶¶ 39–41.)  She claims that CVSD maintains a "racially hostile environment" where the harassment and bullying of non-white students is commonplace.  (*Id.* ¶¶ 41–45.)  Doe contends that a long list of actions taken and statements made by Defendants and other CVSD officials demonstrate that CVSD has a "custom of greatly underreporting, and in fact, covering up instances of bullying, racial discrimination, and intolerance" and

"unwritten and informal policies to deliberately ignore and/or condone racial discrimination, bullying, and harassment." (*Id.* ¶¶ 57–59.)

Specifically, Doe points to a 2019 interview with a former CVSD superintendent. (*Id.* ¶ 53.) The former superintendent said that "he had dealt with an outcry from parents and students over troubling reports that students of color were being targeted with racial slurs, hostility and harassment by white classmates." (*Id.* ¶ 53(d).) Moreover, he said that the district had "failed to adequately address or discipline" students who racially harassed other students, and that CVSD had "significant work to do in terms of student training and faculty training . . . ." (*Id.* ¶¶ 53(g)–(h).) Moreover, the Auditor General of Pennsylvania conducted an audit of CVSD and suggested that CVSD underreported instances of bullying. (*Id.* ¶¶ 55(a)–(d).)

Doe also asserts that several interactions between students and CVSD officials demonstrate CVSD's "unwritten and informal policies to deliberately ignore and/or condone racial discrimination, bullying, and harassment." (*Id.* ¶ 59.) These include "numerous instances of physical encounters between CVHS faculty and minority students," a varsity CVHS football coach yelling a racial slur at a student during a game, a middle school teacher in the CVSD system using a "flat iron to straighten the hair of an interracial minor, both in front of his class and against his will, while another teacher took pictures with her personal cell phone,"

a Hispanic elementary school student being made to kneel on the ground in front of his classmates after he "unintentionally dozed off in class," a "mixed-race" student's attempted suicide after facing "racial intimidation, harassment, and bullying" and the racial discrimination of the only African American student on the CVHS cheerleading team. (*Id.* ¶¶ 59(a)–(k).) Doe alleges that, despite these incidents, "Blanchard has repeatedly . . . denied that CVSD has had any issues with racial intimidation, discrimination, harassment, or bullying." (*Id.* ¶ 60.)

### B. Doe alleges that John Doe 1 and John Doe 2 experienced racial discrimination and harassment as CVSD students.

Jane Doe is John Doe 1 and John Doe 2's parent. (Doc. 19, ¶ 1.) John Doe 1 and John Doe 2 are students at CVHS. (Doc. 19, ¶¶ 1–7.) When Doe filed the amended complaint, John Doe 1 was a senior in high school, and John Doe 2 was a sophomore. (*Id.*) Both children are biracial, but their "physical appearance is predominantly African American." (*Id.* ¶¶ 3–5.)

John Doe 1 first experienced racial discrimination at CVSD in elementary school, and the discrimination and bullying he faced worsened over time. (*Id.* ¶¶ 71–72.) On the first day of high school, John Doe 1 and his friend "were singled out for being African American and made to sit at the front of the bus even though John Doe 1 had no history of causing problems on the bus." (*Id.* ¶ 73.) The bus driver did not force the white students on the bus to move seats. (*Id.* ¶ 74.) The same bus driver later told John Doe 1's girlfriend, who is white, "'you are too good

to be with someone like John Doe 1,' apparently because [John Doe 1] was Black."
(*Id.* ¶ 76.)  Doe reported the bus driver's behavior to CVSD, "but nothing was ever
done about it . . . ."  (*Id.* ¶ 77.)

John Doe 1 faced further discrimination and harassment during his
sophomore year.  During math class, teacher Jennifer Gutzweiler "held up a picture
of a monkey and compared John Doe 1's classmate, who was African American, to
the picture and made similar derogatory comments about John Doe 1 . . . ."  (*Id.*
¶ 78.)  John Doe 1's classmates laughed, and they were "emboldened by this and
other instances to further the racially discriminatory environment at CVSD."  (*Id.*)
After CVSD officials learned of the incident, they neither told Jane Doe about it
nor punished Gutzweiler.  (*Id.* ¶ 80.)  Instead, they moved John Doe 1 to another
math class because of "the negative student-teacher relationship between [John
Doe 1] and Jennifer Gutzweiler."  (*Id.* ¶ 82.)

In addition to the bus and math class incidents, Doe alleges that John Doe 1
endured "[o]ther instances of disparate and racially discriminatory conduct . . . "
while a student at CVSD.  (*Id.* ¶ 87.)  She provides several examples.

Unlike his white peers, John Doe 1 was not provided a proper individualized
education program or additional academic assistance from teachers despite
suffering from multiple learning disabilities.  (*Id.* ¶¶ 84–85, 87(a).)  During the
2021–2022 school year, one teacher read aloud a list of John Doe 1's "alleged

behavioral issues and misconduct" in front of the class.  (*Id.* ¶ 87(b).)  In 2022, an assistant principle advised a CVSD counselor that John Doe 1 should be separated from his friends, who are also African American.  (*Id.* ¶ 87(c).)  Later that year, a white CVSD student sent a picture to John Doe 2 that showed the white student holding a gun and "stating that he would beat John Doe 2's 'everloving ass.'"  (*Id.* ¶ 87(e).)  The school suspended John Doe 1 for confronting the white student about the photo and later suspended him again for expressing his concern that it would be "easy to perpetrate a school shooting at CVHS" on social media.  (*Id.* ¶¶ 87(e)–(f).)  But, it did not punish the white student for sending the photo to John Doe 2.  (*Id.*)

In 2023, when John Doe 1 attempted to express concern about "negative comments being made about him" and prevent an altercation, an assistant principle declined to investigate.  (*Id.* ¶ 87(g).)  Instead, the assistant principal gave John Doe 1 detention for being in the hallway, even though there were "numerous white students in the hallway, none of whom are believed to have been disciplined." (*Id.*)  Less than a week after that, as John Doe 1 attempted to discuss a dispute with peers, CVHS Assistant Director of Student Public Safety Timothy Froelich placed John Doe 1 in an "illegal and criminal restraint hold," released him, and walked away without reporting the incident or taking John Doe 1 to the school nurse for an evaluation.  (*Id.* ¶ 87(h).)  The school suspended John Doe 1 for three days following that incident, and he was also charged with disorderly conduct.  (*Id.*)

Several months later, John Doe 1 was questioned "about an incident at a female student's house to 'ensure the safety of the student at school.'" (*Id.* ¶ 87(i).) John Doe 1 "was not a party to the incident" but was assumed to have been because he is Black. (*Id.*)

Moreover, CVSD placed John Doe 1 in its "Experiential Learning" program, which teaches students anger management techniques. (*Id.* ¶ 87(k).) But Doe alleges that "[a]ll of the CVHS students in the Experiential Learning Program are believed to be minorities, who make up a small fraction of the CVSD population." (*Id.*)

John Doe 2 also suffered discriminatory treatment as a student at CVSD. (*Id.* ¶ 90.) For two weeks, a white student continuously touched John Doe 2's hair. (*Id.* ¶ 92.) John Doe 2 repeatedly asked the white student to stop, but the student continued to touch his hair. (*Id.* ¶ 94.) And when John Doe 2 eventually complained, the student who touched his hair was not disciplined. (*Id.* ¶ 95.) Doe alleges that she, John Doe 1, and John Doe 2 each suffer numerous physical and emotional injuries because of the harassment and discrimination John Doe 1 and John Doe 2 faced as CVSD students. (*Id.* ¶¶ 98–102.)

### C. Claims in the amended complaint and procedural history

Doe's amended complaint contains seven counts. In Count I, Doe alleges that CVSD, Blanchard, Rawls, Rausch, and Shaffner violated Title VI of the Civil

Rights Act of 1964, 42 U.S.C. § 2000d, by creating, condoning, and failing to eliminate a racially hostile environment.  (Doc. 19, ¶¶ 103–18.)  Count II alleges that CVSD, Blanchard, Rawls, Rausch, and Shaffner violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by participating in, condoning, or remaining deliberately indifferent to the racial harassment and discrimination the Does faced.  (*Id.* ¶¶ 119–27.)  Counts III, IV, and V assert tort claims for false imprisonment, assault, and battery against Froelich and CVSD.  (*Id.* ¶¶ 128–57.)  Count VI raises a claim of intentional infliction of emotional distress against Defendants, and Count VII raises a claim of negligent infliction of emotional distress against Defendants.  (*Id.* ¶¶ 158–69.)  Every count seeks, among other remedies, compensatory damages and punitive damages.  (*See*, *e.g.*, ¶ 169.)

Doe filed her amended complaint on April 18, 2025.  (Doc. 19.)  Defendants filed their motion to dismiss on May 2, 2025, and an accompanying brief in support on May 16, 2025. (Docs. 23, 27.)  Doe filed a brief in opposition to the motion to dismiss on June 30, 2025.  (Doc. 35.)  Defendants filed a reply brief on July 14, 2025.  (Doc. 36.)  Thus, the motion to dismiss is ripe for disposition.

### JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff alleges a violation of a constitutional right under 42 U.S.C.

§ 1983 and a violation of Title VI of the Civil Rights Act of 1964, a federal statute. Venue is appropriate pursuant to 28 U.S.C. § 1391 because all parties are located within the Middle District of Pennsylvania and all acts or omissions alleged in the amended complaint occurred within the Middle District.

STANDARD OF REVIEW

### A. 12(b)(6) motion to dismiss standard

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

### B. 12(f) motion to strike standard

Under Federal Rule of Civil Procedure 12(f), a party can move a district court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." This rule is "designed to reinforce the requirement in Rule 8 . . . that pleadings be simple, concise, and direct." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2020 update). To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted). They also "may not serve as an avenue to procure the dismissal of all or part of a complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), *vacated in part on*

*reconsideration*, 2014 U.S. Dist. LEXIS 102143 (July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

## DISCUSSION

Defendants move to dismiss each count of the amended complaint and to strike several paragraphs from the amended complaint. The court addresses their arguments in turn.

### A. Count I–Title VI claim

In Count I, Doe alleges that CVSD, Blanchard, Rawls, Rausch, and Shaffner violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, by creating, condoning, and failing to eliminate a racially hostile environment.  (Doc. 19, ¶¶ 103–18.)  Title VI sets forth that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.[2]  A private individual may sue to enforce Title VI and obtain injunctive relief and damages. *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 656 (E.D. Pa. 2020) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)).  A plaintiff may not recover compensatory damages under Title VI without establishing intentional discrimination.  *Canaan v. Carnegie Mellon Univ.*, 760 F. Supp. 3d 306, 320 (W.D. Pa. 2024) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014); *Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 270 (E.D. Pa. 2020); *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019)).

---

[2] Defendants do not dispute that CVSD receives federal financial assistance.  (*See* Doc. 27, pp. 17–20; Doc. 36, pp. 4–7.)

The court assumes that Doe intends to assert her Title VI claim upon CVSD's "failure to address a racially hostile environment."[3] *Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 699 (M.D. Pa. 2023) ("*Williams* I") (quoting *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016)). To state a Title VI hostile environment claim, a plaintiff must allege that: 1) they are a member of a protected class; 2) they suffered harassment because of race, color or national origin that was "so severe, pervasive, and objectively offensive" that it deprived them of access to an "educational activity or benefit" for which they otherwise qualified; and 3) "that the school was 'deliberately indifferent' to known acts of harassment" by responding to those incidents in a way that is clearly unreasonable. *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548, 558, 558 n.11 (E.D. Pa. 2025) (quoting *Davis, as Next*

---

[3] Title VI also allows a plaintiff to raise a claim for "direct discrimination." *See Canaan*, 760 F. Supp. 3d at 319–20; *Moore*, 471 F. Supp. 3d at 655 (discussing the difference between a "prima facie case of discrimination in an educational setting" and a Title VI claim "based on a racially hostile environment") (citing *Bridges*, 644 F. App'x at 179). To state a direct discrimination Title VI claim, a plaintiff "may establish discrimination through the deliberate indifference standard by showing that an educational institution had knowledge that a federally protected right is substantially likely to be violated and failed to act despite that knowledge" through either direct or circumstantial evidence. *Canaan*, 760 F. Supp. 3d at 320 (citing *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013)). Count I of the amended complaint notes that "the existence of a racially hostile educational environment is a question of fact . . ." and alleges that "[t]he racially hostile environment at CVSD was a direct result of the knowingly intentional acts and deliberate indifference of CVSD, the Board, and CVSD faculty, staff, and students" while claiming that the "racially hostile environment and racial discrimination, harassment, and bullying" caused John Doe 1 and John Doe 2's injuries. (Doc. 19, ¶¶ 105, 112, 117.) Thus, the court assumes that Doe intends to proceed under the "racially hostile environment" theory of Title VI liability. *See Bridges*, 644 Fed. App'x at 179.

*Friend of LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999))[4]; *Williams I*, 673 F. Supp. 3d 698–99; *Canaan*, 760 F. Supp. 3d at 324–28. A plaintiff can prove that a hostile environment exists by showing that the alleged conduct was severe *or* pervasive; she need not establish that the harassment is both severe and pervasive.  *See Canaan*, 760 F. Supp. 3d at 324–327 (discussing disagreement over the severe or pervasive standard but ultimately applying that standard to a Title VI hostile environment claim); *Landau*, 780 F. Supp. 3d at 558 (applying the severe or pervasive standard) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017); *Canaan* 760 F. Supp. 3d at 326–27).

To determine whether severe or pervasive harassment sufficient to create a hostile environment exists, the court examines the totality of the circumstances and the "frequency of the harassing conduct, its severity, and whether it was physically threatening or humiliating, or instead an offensive utterance."  *Landau*, 780 F. Supp. 3d at 558 (citing *Saxe*, 240 F.3d at 205)  Either a "particularly offensive [single] instance" or "multiple less egregious instances over time" may be sufficient to establish this element, but "name calling or one-off instances of

---

[4] Although *Davis* dealt with a sexual harassment claim brought pursuant to Title IX, the Third Circuit held in *Saxe v. State College Area School District* that the same reasoning "applies equally to harassment on the basis of the personal characteristics enumerated in Title VI and other relevant federal anti-discrimination statutes."  240 F.3d 200, 206 n.5 (3d Cir. 2001).

moderate bullying" and "simple disagreement with educators' management decisions" are not. *Id.* (citing *Davis*, 526 U.S. at 651–52)).

The plaintiff must also prove that the school knew about the alleged acts of harassment and responded to them with deliberate indifference. To show knowledge, the plaintiff must "allege that the harassment was reported to an appropriate person who is, at minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Williams v. Jersey Shore Area Sch. Dist.*, No. 4:22-CV-00473, 2023 WL 8703402, at *3 (M.D. Pa. Dec. 15, 2023) ("*Williams* II") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (internal quotation marks omitted)). To show deliberate indifference, the plaintiff must demonstrate that the school's response to racial discrimination was "clearly unreasonable in light of the known circumstances." *Id.* (quoting *Bridges*, 644 F. App'x at 179).

Before addressing the merits of Doe's Title VI claim against CVSD, the court will address two preliminary arguments Defendants set forth in their brief in support of the motion to dismiss. First, they argue that "individual liability may not be asserted under Title VI," so the court should dismiss Doe's Title VI claim against Blanchard, Rawls, Rausch, and Shaffner. (Doc. 27, p. 20 (citing *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011).) Doe agrees and withdraws Count I as to Blanchard, Rawls, Rausch, and Shaffner in her brief in

opposition to the motion to dismiss.  (Doc. 35, p. 5.)  Therefore, the court will

dismiss Count I as to Blanchard, Rawls, Rausch, and Shaffner with prejudice.

Second, Defendants argue that Doe may not recover emotional distress and

punitive damages pursuant to Title VI.  (Doc. 27, pp. 20–22.)  Doe does not

respond to this argument in her brief in opposition to the motion to dismiss.  (Doc.

35, pp. 1–13.)  A plaintiff may recover neither punitive nor emotional distress

damages through a private Title VI suit.  *Barnes v. Gorman*, 536 U.S. 181, 189

(2002); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022).

Therefore, the court will dismiss Count I's demand for punitive and emotional

distress damages with prejudice.

Doe's Title VI claim against CVSD remains to be addressed.  Defendants

argue that the court should dismiss this claim because the amended complaint

contains only "bald assertions or legal conclusions" as to the harassment and

hostile environment suffered by John Doe 1 and John Doe 2 and fails to establish

that CVSD officials had knowledge of, were deliberately indifferent to, or were

even aware of the environment and events described in the complaint.  (Doc. 27,

pp. 17–20.)  In response, Doe argues that the amended complaint properly alleges

intentional discrimination because it demonstrates that CVSD officials knew of the

discrimination and harassment suffered by John Doe 1 and John Doe 2 and did not

act.  (Doc. 35, pp. 5–6.)  In their reply brief, Defendants reiterate their argument

that the amended complaint fails to establish deliberate indifference or another form of intentional discrimination. (Doc. 36, pp. 4–7.)

John Doe 1 and John Doe 2 are biracial, and their "physical appearance is predominantly African American." (Doc. 19, ¶¶ 3–5.) Defendants do not dispute that they are members of a protected class nor that they qualify for the educational benefits at issue here, so Doe's pleading satisfies the first element of a hostile educational environment Title VI claim. *See Landau*, 780 F. Supp. 3d at 558 n.11. To establish the second element of her Title VI claim, Doe must demonstrate that her sons faced discrimination and harassment that was so severe or pervasive and objectively offensive that it deprived them of access to an educational benefit. *Williams I*, 673 F. Supp. 3d at 699; *Canaan*, 760 F. Supp. 3d at 331.

Doe satisfies the second element and alleges instances of harassment that are both pervasive and severe. John Doe 1 faced harassment from staff beginning on the first day of high school when the bus driver made him sit at the front of the bus and later made a derogatory comment to his girlfriend about his race. (Doc. 19 ¶¶ 73–76.) Harassment continued during John Doe 1's sophomore year, when a teacher compared John Doe 1's Black classmate to a monkey and made similar comments about John Doe 1. (*Id.* ¶¶ 78–82); *see Davis*, 526 U.S. at 653 (recognizing, in the Title IX context, that the fact that a teacher engages in the harassment at issue is "relevant" to a hostile educational environment claim

because "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access . . .").  Doe alleges that CVSD teachers and administrators denied John Doe 1 extra academic help and individualized accommodation due to his multiple learning disabilities, even though they provided those benefits to white students.  (Doc. 19, ¶¶ 84–85, 87(a).)  And throughout his time as a student at CVHS, Doe alleges that John Doe 1 was disciplined more severely than his white peers because he is Black.  (*Id.*¶¶ 87(e)–(k).)  John Doe 2 faced similar harassment and disparate treatment as a CVSD student.  (*Id.* ¶¶ 87(e), 92–95.)  A classmate continually touched his hair for two weeks, while another student sent him a threatening picture with a gun.  (*Id.*)  Doe alleges that neither student was disciplined.  (*Id.*)

Moreover, Doe alleges that John Doe 1 and John Doe 2 have been "denied the same educational and other benefits and the education[al] experience to which they are entitled, and their white counterparts receive."  (*Id.* ¶ 99.)  In addition to the specific allegation that John Doe 1 has been denied extra help in math and accommodations due to his learning disabilities, *id.* ¶¶ 84–85, 87(a), Doe claims that John Doe 1 and John Doe 2 suffered a deterioration in their mental health and feel "disconnected from others in the community solely on the basis of their race."  (*Id.* ¶¶ 98(a–j).)

Considering the "totality of the circumstances," the court finds that Doe has adequately alleged severe or pervasive harassment that deprived John Doe 1 and John Doe 2 of access to an educational benefit. *Landau*, 790 F. Supp. 3d at 558 (citing *Castleberry*, 863 F.3d at 264). The amended complaint describes multiple instances of student-on-student and teacher-on-student harassment over a period of several years, some of which are summarized here. (Doc. 19, ¶¶ 67–96.) These incidents included teachers and staff making racist remarks to John Doe 1 directly, treating John Doe 1 differently in an educational context because of his race, disciplining John Doe 1 more severely because of his race, and other students touching and threatening John Doe 2 without punishment. (*Id.*)*; see Booker v. Bangor Area Sch. Dist*., No. 14-CV-5242, 2015 WL 1344661, at *3 (E.D. Pa. Mar. 24, 2015) (finding that a student suffered a racially hostile environment where classmates sang a song about the Ku Klux Klan and used racial slurs and stereotypes and a teacher "comment[ed] on [his] buttocks in front of a group of other teachers"). Moreover, it alleges that John Doe 1 and John Doe 2 suffered anxiety, depression, and other mental health conditions because of the harassment they suffered as CVSD students, and that they were denied educational opportunities because of their race. (Doc. 19, ¶¶ 98–99); *Davis*, 526 U.S. at 651 (holding that it is not necessary to show "physical exclusion to demonstrate that students have been deprived by the actions of another student or students of an

educational opportunity . . ."); *Booker*, 2015 WL 1344661, at *3 (holding that "a substantial drop in grades or deterioration in a student's mental health" demonstrate evidence of barred access to education) (citing *Davis*, 526 U.S. at 634, 651).

Defendants argue that Doe fails to satisfy the second element of her hostile educational environment claim because her allegations are merely conclusory. (Doc. 27, p. 19.)  But having examined the specific instances of harassment and mistreatment included in the amended complaint, some of which are described above, the court finds that Doe has sufficiently pleaded this element of her hostile environment claim.

Defendants' primary argument focuses on the last element of Doe's hostile environment claim: that CVSD knew of the severe or pervasive harassment and reacted to it with deliberate indifference.  *Whitfield*, 412 Fed. App'x at 521 (citing *Davis*, 526 U.S. at 633).  In short, Defendants argue again that the amended complaint offers only conclusory allegations regarding the CVSD's knowledge of the harassment and the actions it took, or failed to take, in response.  (Doc. 27, p. 20; Doc. 36, p. 5.)

To demonstrate that CVSD knew of the alleged harassment, Doe must "allege that the harassment was reported to an appropriate person who is, at minimum, an official of the recipient entity with authority to take corrective action

to end the discrimination." *Williams I*, 673 F. Supp. 3d at 699 (quoting *Gebser*, 524 U.S. at 290) (internal quotation marks omitted); *Moore*, 471 F. Supp. 3d at 662 (discussing the knowledge requirement).

The court concludes that Doe's allegations give rise to the reasonable inference that the appropriate CVSD officials knew of harassment and disparate treatment suffered by John Doe 1 and John Doe 2. Doe alleges that she reported the incident with the bus driver to CVSD, that officials moved John Doe 1 to a different math class after the teacher's comments, officials suspended John Doe 1 after Froelich restrained him for an allegedly discriminatory reason, and that school officials were involved in multiple instances of disparate disciplinary decisions regarding John Doe 1 and his white peers. (*See* Doc. 19, ¶¶ 72–87.) Moreover, John Doe 2 reported the student continually touching his hair, and school officials "wrote off" the threatening message another student sent to John Doe 2 as "boys will be boys." (*Id.* ¶¶ 87(e), 95.) The court finds that, construing the facts and all reasonable inferences derived therefrom in Doe's favor, she has sufficiently alleged that many of the incidents described in the amended complaint were known to the appropriate CVSD officials because she informed them of those incidents or their actions in response to those incidents give rise to the reasonable inference that they knew about and were involved in them. Moreover, the complaint supports the inference that these officials had the "authority to take

constructive action to end the discrimination" because in several instances, Doe alleges that they took specific administrative action in response to incidents of harassment that failed to fix the problem. *Williams I*, 673 F. Supp. 3d at 699 (quoting *Gebser*, 524 U.S. at 290). For example, she alleges that CVSD officials merely moved John Doe 1 to a different math class after his math teacher made racially derogatory remarks about him and another Black classmate. (Doc. 19, ¶¶ 78–82.)

The final question is whether, having been informed of these instances of harassment, CVSD acted in a way that was deliberately indifferent. *Whitfield*, 412 Fed. App'x at 521–22. Doe may prove deliberate indifference by demonstrating that CVSD's response to the harassment at issue was "clearly unreasonable in light of the known circumstances." *Id.* (quoting *Davis*, 526 U.S. at 648.) The court finds, after considering the allegations in the amended complaint and construing all reasonable inferences arising from those allegations in Doe's favor, that the amended complaint meets this standard. CVSD responded to the harassment described above by either ignoring it or disparately disciplining John Doe 1. (*See* Doc. 19, ¶¶ 72–95.) For example, it did not discipline the bus driver or even respond when Doe reported that the bus driver made racist comments to John Doe 1 and subjected him to extra scrutiny because he is Black. (*Id.* ¶¶ 72–77.) It did not discipline the math teacher who compared another Black student to a monkey

and then made similar comments about John Doe 1, it merely moved John Doe 1 to a different class.  (*Id.* ¶¶ 78–82.)  It did not discipline Froelich for allegedly physically restraining John Doe 1 because he is Black.  (*Id.* ¶ 87(h).)  When a student sent a picture of a gun and a threat of violence to John Doe 2, it did not discipline that student, but suspended John Doe 1 for confronting him.  (*Id.* ¶ 87(e).)  And when John Doe 2 complained about the student consistently touching his hair for two weeks, CVSD did not discipline the student. (*Id.* ¶ 95.)

CVSD's failure to take any action in response to these incidents demonstrates deliberate indifference.  A court in this district held that when a school district met with the victims of harassment and their parents, investigated incidents of harassment, took disciplinary action, documented incidents, and reviewed camera footage, it did not act clearly unreasonably in response to allegations of harassment.  *Williams I*, 673 F. Supp. 3d at 700.[5]  Similarly, in *Whitfield*, 412 Fed. App'x at 521–22, the Third Circuit held that when school administrators disciplined children following several incidents and implemented a racial sensitivity program, the school did not act unreasonably.  CVSD took no such action, and in at least one instance, made no effort to address harassment at

---

[5] Ruling on a subsequent motion to dismiss, the court held that the second amended complaint sufficiently alleged that school acted with deliberate indifference to the same allegations because the plaintiff alleged that, although the district said it took action to address complaints of harassment, it did not carry out the remedial measures it promised in response to one incident. *Williams II*, 2023 WL 8703402, at *4.

all.  (*See* Doc. 19, ¶¶ 72–77.)  Therefore, the court finds that Doe has adequately

pleaded that CVSD was deliberately indifferent to the severe and pervasive

harassment faced by John Doe 1 and John Doe 2.

The court finds that Doe has sufficiently alleged a hostile educational

environment claim against CVSD that seeks compensatory damages, so

Defendants' motion to dismiss Count I against CVSD will be denied.  However,

because a plaintiff may neither recover punitive damages, nor recover emotional

distress damages, nor sue an individual defendant pursuant to a private Title VI

suit, the court will dismiss Count I as to Blanchard, Rawls, Rausch, and Shaffner

and Doe's request for punitive and emotional distress damages under Title VI with

prejudice.

### B. Count II–Equal Protection Claim

Doe alleges that CVSD, Blanchard, Rawls, Rausch, and Shaffner violated

the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.  (Doc. 19, ¶¶ 119–127.)  Doe raises this claim pursuant to 42 U.S.C.

§ 1983.  (*Id.*)  A municipal entity like a school district may only be held liable in a

Section 1983 suit "when the alleged constitutional transgression implements or

executes a policy, regulation or decision officially adopted by the governing body

or informally adopted by custom."  *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706

F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh,* 89 F.3d 966, 971

(3d Cir.1996)); *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Therefore, the court will address Doe's Equal Protection claim against Blanchard,

Rawls, Rausch, and Shaffner first, before moving onto the *Monell* equal protection

claim she alleges against CVSD.

### 1. Equal Protection claims raised against individual defendants

Doe does not specify whether she raises an Equal Protection claim against

the individual defendants in their official or individual capacities.  School board

members acting in their official capacities are part of the school district itself for

the purpose of Section 1983 liability.  *Moorehead v. Sch. Dist. of City of*

*Allentown*, No. 5:22-CV-03959, 2023 WL 2976556, at *13 (E.D. Pa. Apr. 17,

2023) (quoting *Donovan v. Pittston Area Sch. Dist.*, No. CIV.A. 3:14-1657, 2015

WL 3771420, at *5 (M.D. Pa. June 17, 2015)).  So are Blanchard and Rawls, who

are CVSD employees.  *C.S. v. S. Columbia Sch. Dist.*, No. 4:12-CV-1013, 2013

WL 2371413, at *11 (M.D. Pa. May 21, 2013) ("Although it is not clear that

Principal Becker was sued in his official capacity, to the extent that [there is] a

claim against him in his official capacity [it] is really a claim against the School

District."); *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa.

2009) ("[A] suit against an individual in her official capacity is a suit against the

municipality.")  Therefore, to the extent Doe asserts an Equal Protection claim

against Blanchard, Rawls, Rausch, and Shaffner in their official capacities, those

claims are redundant of her *Monell* claim against CVSD, and the court will dismiss them with prejudice.

Doe appears to raise an Equal Protection claim against the individual defendants based on their "deliberate indifference to student-on-student racial harassment." *Williams II*, 2023 WL 8703402, *5 (quoting *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012));  (*see* Doc. 19, ¶¶ 122–23 (alleging that Blanchard, Rawls, Rausch, and Shaffner "participated in, condoned, or were deliberately indifferent to the racially hostile environment within CVSD as well as the racial discrimination experienced by John Doe 1 and John Doe 2").)  To successfully plead that the individual defendants violated John Doe 1 and John Doe 2's Equal Protection rights by being deliberately indifferent to student-on-student racial harassment, Doe must establish that:

> [(1)] the child in question was in fact harassed by other students based on his race; (2) that such race-based harassment was actually known to the defendant school official; and (3) that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur.

*Williams II*, 2023 WL 8703402, *5 (quoting *DiStiso*, 691 F.3d at 241); *Doe v. Red Lion Area Sch. Dist.*, No. 1:24-CV-186, 2025 WL 19819, at *5 (M.D. Pa. Jan. 2, 2025) (listing the same elements) (quoting *DiStiso*, 691 F.3d at 241).

Defendants argue that Doe's Equal Protection claim against the individual defendants fails because she does not allege that John Doe 1 and John Doe 2 were

similarly situated to members of an unprotected class, or that they were treated differently from a similarly-situated comparator.  (Doc. 27, pp. 25–26; Doc. 36, pp. 7–8.)  They also argue that Doe fails to allege that the individual defendants intentionally discriminated against John Doe 1 and John Doe 2 by being deliberately indifferent to the harassment and discrimination they faced. (Doc. 27, pp. 26–27; Doc. 36, pp. 7–8.)  In response, Doe merely argues that her amended complaint states facts sufficient to sustain her Equal Protection claim against CVSD and the individual defendants.  (Doc. 35, pp. 6–7.)

As described above in the context of Doe's Title VI claim, the amended complaint sufficiently alleges that John Doe 1 and John Doe 2 were racially harassed by students, staff, and teachers.[6]  Therefore, the allegations contained in the amended complaint satisfy the first element of an equal protection claim against Blanchard, Rawls, Rausch, and Shaffner.

Next, Doe must establish that this race-based harassment was "actually known" to Blanchard, Rawls, Rausch, and Shaffner.  *Williams II*, 2023 WL

---

[6] Doe alleges that her sons were harassed against by both students and teachers.  (Doc. 19, ¶¶ 67–96.)  Although cases such as *Williams II*, 2023 WL 8703402, at *5, address officials' deliberate indifference to student-on-student harassment, specifically, the court considers allegations of harassment and discrimination by other students, teachers, and staff together for the purpose of evaluating Doe's equal protection claims.  *See Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19CV08450, 2020 WL 2847757, at *5 (D.N.J. June 1, 2020) (addressing harassment from high school students, parents, and other adults at a high school basketball game).

8703402, at *5 (quoting *DiStiso*, 691 F.3d at 241).  The amended complaint alleges that the individual defendants "participated in, condoned, or were deliberately indifferent" to the harassment and discrimination John Doe 1 and John Doe 2 faced.  (Doc. 19, ¶ 122.)  She also alleges that the individual defendants "have knowingly and/or indifferently allowed the racially hostile environment at CVSD and CVHS, respectively, to continue unabated . . . ."  (*Id.* ¶ 66.)  Moreover, Doe alleges that she reported several specific instances of harassment to CVSD officials, and that school officials knew of several additional instances of in-school harassment from both students and teachers because they disciplined John Doe 1 in relation to those incidents.  (*Id.* ¶¶ 67–96.)  Therefore, evaluating the facts and drawing all reasonable inferences in Doe's favor at this pleading stage, the court finds that she has adequately pleaded this element of her Equal Protection claim against the individual defendants.

Finally, Doe must plead that the individual Defendants' reaction to the racial harassment and discrimination John Doe 1 and John Doe 2 faced was unreasonable in light of the circumstances.  *Williams II*, 2023 WL 8703402, at *5 (quoting *DiStiso*, 691 F.3d at 241).  The court finds that Doe adequately pleads this element as well.  Doe alleges that Blanchard, Rawls, Rausch, and Shaffner are "responsible for the supervision, direction, control . . . and disciplining of the teachers, staff, associated personnel, and students at CVHS . . . ."  (Doc. 19, ¶¶ 21, 24, 26, 28.)

Yet despite being notified of the student-on-student harassment John Doe 1 and John Doe 2 faced, and despite assumedly learning of other incidents of harassment perpetrated by teachers and staff through subsequent disciplinary actions, Doe alleges that the Defendants neither took adequate disciplinary action nor attempted to sufficiently address the persistent harassment the Does faced.  (*Id.* ¶¶ 67–96.) Moreover, the actions Defendants did take in several instances, such as simply moving John Doe 1 to a different math class without disciplining the teacher who harassed him, disciplining John Doe 1 differently from his white peers, and questioning John Doe 1 about an incident at another student's house even though he was not involved in the incident, suggests that Defendants and the teachers and staff members they supervised reacted unreasonably in response to the harassment that is alleged to have occurred.  (*Id.* ¶¶ 78–82, 87.)  Therefore, the court finds that Doe has adequately pleaded her Equal Protection claim against Blanchard, Rausch, Rawls, and Shaffner in their individual capacities.

Defendants argue that even if Doe has adequately stated an equal protection claim against Blanchard, Rausch, Rawls, and Shaffner, that claim should be dismissed because those four Defendants are entitled to qualified immunity.  (Doc. 27, pp. 39–42.)  "Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not 'clearly established' when the individual acted."  *Eberhardinger v. City of York*, 341 F. Supp. 3d 420, 430

(M.D. Pa. 2018), *aff'd*, 782 F. App'x 180 (3d Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 244–45 (2009)).  Qualified immunity should only be found at the motion to dismiss stage when it is established by the facts on the face of the complaint.  *O'Donnell v. Cumberland Cnty.*, 195 F. Supp. 3d 724, 735 (M.D. Pa. 2016) (quoting *Schor v. North Braddock Borough*, 801 F. Supp. 2d 369, 378–79 (W.D. Pa. 2011)).

The court declines to grant Blanchard, Rausch, Rawls, and Shaffner's qualified immunity at this stage.  As the court noted in *Williams II*, seven Courts of Appeals[7] have held that "an individual may be held liable under the Equal Protection Clause for deliberate indifference to student-on-student harassment." 2023 WL 8703402, at *6.[8]  And in addressing a claim of qualified immunity against an Equal Protection claim similar to the one at issue here, another court

---

[7] *Williams II*, 2023 WL 8703402, at *6 (citing *DiStiso*, 691 F.3d at 241; *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018); *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 851-52 (6th Cir. 2016);  Nabozny v. Podlesny, 92 F.3d 446 (7th Cir. 1996); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999); *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015)).

[8] The court noted that, even in the absence of "factually analogous Supreme Court precedent or binding Third Circuit opinions, a right may still be clearly established if there exists a robust consensus of persuasive authority in the Courts of Appeals."  *Williams II*, 2023 WL 8703402, at *6 (quoting *Johnson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021)) (internal quotation marks omitted). The court also recognized that, although the relevant Courts of Appeals holdings dealt with liability for sexual harassment rather than racial discrimination, "the Equal Protection Clause applies with equal force in both circumstances, and there is no principled basis to distinguish the two."  *Id.* (citing *Feminist Majority Found.*, 911 F.3d at 702 n.17).

declined to grant immunity at the motion to dismiss stage "on academic grounds,

preventing plaintiffs from adducing facts through discovery that may substantiate

their constitutional claims." *Dickerson*, 2020 WL 2847757, at *6; *see also L.S. v.

*Hanover Area Sch. Dist.,* No. 3:22CV234, 2024 WL 2393038, at *22 (M.D. Pa.

May 23, 2024) (denying defense of qualified immunity raised against claims of

deliberate indifference to student-on-student sexual harassment) (citing *Williams*

*II*, 2023 WL 8703402, at *6, nn.75–80.)  Thus, the court similarly declines to grant

Defendants' claim to qualified immunity at this stage.

To the extent Doe raises an Equal Protection claim against Blanchard,

Rawls, Rausch, and Shaffner in their official capacities, those claims are dismissed

with prejudice.  But the court will deny the motion to dismiss Doe's claims against

those Defendants in their individual capacities.

### 2. *Monell* claim against CVSD

Doe alleges that the "true policies, customs, and practices of CVSD are

unwritten and informal and for its directors, staff, administration, and personnel to

be deliberately indifferent to and/or actively condone racial discrimination, bigotry,

bullying, and harassing behaviors, and general intolerance."  (Doc. 19, ¶ 43.)  To

state a claim against a municipal entity pursuant to *Monell*, the "plaintiff must

allege that a local government's policy or custom inflicted the injury in question."

*Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting

*Monell*, 436 U.S. at 694) (cleaned up).  A policy "is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Doe does not allege that CVSD policymakers issued an "official proclamation, policy, or edict" setting forth a policy of remaining deliberately indifferent to instances of harassment and discrimination, so Doe's claim instead relies on the existence of a custom.  *See id.*

A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman*, 930 F.3d at 798).  These allegations must include "more than a mere failure to act or investigate." *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 668 (E.D. Pa. 2020) (quoting *J.H. v. City of Phila.*, No. 06-2220, 2008 WL 3983269, at *13 (E.D. Pa. Aug. 19, 2008)).

Moreover, to plead a *Monell* claim based on custom, the plaintiff must allege that the custom was the proximate cause of their injuries. *Est. of Roman*, 914 F.3d at 798 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  To establish proximate cause, the plaintiff must demonstrate an "'affirmative link' between the policy or custom and the particular constitutional violation he

alleges." *Id.* (citing *Bielevicz*, 915 F.2d at 850).  That affirmative link is established if the plaintiff shows that the municipal entity "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.*  (quoting *Bielevicz*, 915 F.2d at 851) (cleaned up).  Additionally, to prove a custom, a plaintiff must demonstrate "that a decision-maker is responsible either for the policy or, through acquiescence, for the custom." *Kean v. Henry*, 523 F. App'x 879, 881 (3d Cir. 2013) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 193 (3d Cir. 2009) (cleaned up)); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Phila*., 895 F.2d 1469, 1481 (3d Cir. 1990)).

Defendants argue that the amended complaint fails to set forth facts that establish a policy, custom, or practice of deliberate indifference to the racial harassment of students.  (Doc. 27, p. 23.)  They contend that CVSD's discrimination and bullying policies undercut "[Doe's] argument in that there is no plausible support to show that Defendants violated any of the Plaintiff's civil rights while acting pursuant to any custom or policy." (*Id.* at 24.)  And they argue that Doe's references to policy, practice, and custom are merely conclusory and do not establish a causal link between the alleged policy or custom and the injuries it caused.  (*Id.*)  Doe argues that her allegations of CVSD previously ignoring

incidents of harassment sufficiently establishes a pattern of Equal Protection

Clause violations that sustain her *Monell* claim against CVSD.  (Doc. 35, p. 7.)

Doe specifically alleges that CVSD maintained a custom of being

deliberately indifferent to the racial harassment of students.  (Doc. 19, ¶ 43.)  The

multiple instances of harassment John Doe 1 and John Doe 2 faced as CVSD

students support the existence of this custom, Doc. 19, ¶¶ 67–97, as do Doe's

allegations that CVSD "cover[ed] up" previous instances of harassment.  (*Id.* ¶ 57

("CVSD has a history, policy, practice, and custom of greatly underreporting, and

in fact, covering up instances of bullying, racial discrimination and intolerance."))

Doe also provides examples of "CVSD's unwritten and informal policies to

deliberately ignore and/or condone racial discrimination, bullying, and

harassment" that include both teacher-on-student and student-on-student

harassment.  (*See id.* ¶¶ 59(b)–(k) (describing, for example, an incident in which a

student attempted suicide after CVSD officials "turned a blind eye" when other

students racially harassed her).)[9]

---

[9] The court assumes, in accordance with the amended complaint, that CVSD did not respond to
the instances of harassment outlined in this section of the complaint because Doe offers them as
examples of CVSD's policy to "deliberately ignore" instances of racial harassment at CVSD.
(Doc. 19, ¶ 59 (listing examples of CVSD's "unwritten and informal policies to deliberately
ignore and/or condone racial discrimination, bullying, and harassment . . . ."))

Crucially, however, Doe alleges that a CVSD policymaker[10]—the district's former superintendent, Dr. David E. Christopher—said in a 2019 interview that "several parents had addressed the school board with concerns that their children were being racially harassed by white students, and the district had failed to adequately address or discipline offenders." (*Id.* ¶ 53(g).)[11] Doe alleges that Christopher promised to "rid [] CVSD of that racial division and intolerance" by "collaborat[ing] with faculty, parents, and most importantly, students." (*Id.* ¶¶ 53(b)–(c).) Nonetheless, Doe alleges that CVSD never acted upon Christopher's intention of reform. (*Id.* ¶ 54); *see Est. of Roman*, 914 F.3d at 799 (explaining that a consent decree between the City of Newark and the United States as well as a

---

[10] "The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent." *Dipippa v. Union Sch. Dist.*, 819 F. Supp. 2d 435, 443 (W.D. Pa. 2011) (citing 24 Pa. Stat. Ann. §§ 5–508, 5–510, 5–514, 10–1081; *McGreevy v. Stroup*, 413 F.3d 359, 369 (2005)). Moreover, pursuant to Pennsylvania law, "a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions." *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *3 (3d Cir. July 12, 2023).

Nonetheless, "When deciding who has policymaking responsibility, 'a court must determine which official has final, unreviewable discretion to make a decision or take an action,' a question that is answered by looking to state law." *Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Here, Defendants do not dispute that the superintendent of CVSD and the CVSD school board members are policymakers for the purpose of *Monell* liability stemming from deliberate indifference to the racial harassment of students. (*See* Doc. 27, pp. 1–47; Doc. 36, pp. 1–15.) At this stage, and without further briefing from the parties on that issue, the court assumes that they are.

[11] The amended complaint alleges that Blanchard formerly served as the assistant superintendent under Christopher, and that Shaffner has served on the CVSD school board for "decades." (Doc. 19, ¶¶ 50, 61.) Thus, the court finds that it is reasonable to infer that they were aware of these prior complaints as well.

newspaper article supported an allegation of an unlawful custom because they "acknowledge[ed] a pattern or practice of conduct by the Newark Police Department" of violating individuals' Constitutional rights) (cleaned up).

The court finds that the combination of the multiple examples of unaddressed or improperly addressed harassment against the backdrop of Christopher's prior statements establish a district-level custom of being deliberately indifferent to instances of racial harassment against students at this pleading stage. (*See* Doc. 19, ¶¶ 34–102.)  Moreover, because parents informed Christopher and the CVSD School Board of these previous instances of harassment without proper disciplinary response, *id.* ¶ 53(g), and drawing an inference of knowledge from the facts that Doe reported instances of harassment to CVSD and the school took disciplinary actions against John Doe 1, *id.* ¶¶ 73–96, the court finds that Doe has established that CVSD decision-makers or policymakers knew of and acquiesced to patterns of similar violations.

For the same reason, Doe has adequately alleged causation; she claims CVSD decision-makers knew of a pattern of previous instances of deliberate indifference to racial harassment, and they failed to take action to eliminate that pattern despite their knowledge. (*Id.* ¶¶ 53(g), 73–96.)  Doe's allegations support the inference that CVSD's allowance of continued racial harassment contributed to John Doe 1 and John Doe 2's injuries by creating "socialized role expectations"

and allowing harassment to continue without punishment.  (*Id.* ¶¶ 67, 78.)  *See Est. of Roman*, 914 F.3d at 799 ("[I]t is logical to assume that the City's continued official tolerance of repeated misconduct facilitated similar unlawful actions in the future . . . .") (quoting *Bielevicz*, 915 F.2d at 851) (citation modified).

Moreover, the court finds that, at this stage, Doe alleges that the custom of deliberate indifference went beyond a failure to act or investigate.  *Moore*, 471 F. Supp. 3d at 668.  She alleges that a district decision-maker recognized the need to address racial harassment, promised to act to remedy it, and did not follow through on that promise, and that CVSD officials deliberately ignored or covered up other incidents of racial harassment.  (*Id.* ¶¶ 53(b)–(c), 57, 73–96); *Compare Williams II*, 2023 WL 8703402, at *8 (finding that the facts of the complaint at issue went beyond a failure to act or investigate because plaintiffs "alleged that [the school district defendant] ended a program for training staff regarding racial harassment, ignored incidents of such harassment, failed to report such harassment as required by Pennsylvania law, all while failing to have a 'real discussion' about alleged harassment") (internal citations omitted), *with Doe by Nied v. Riverside Sch. Dist.*, No. 3:23-CV-1118, 2023 WL 8549035, at *8 (M.D. Pa. Dec. 11, 2023), *reconsideration denied*, No. 3:23-CV-1118, 2024 WL 1604646 (M.D. Pa. Apr. 12, 2024) (finding that plaintiff failed to plead that a school district acted affirmatively for the purpose of *Monell* liability where the district "fail[ed] to protect" a student

from the actions of a private actor).  Thus, the court finds that Doe has adequately

pleaded her Section 1983 claim against CVSD.

However, as Defendants argue, Doc. 35, p. 42, "punitive damages are not

recoverable against a municipality in a § 1983 suit." *Bradley v. Brookhaven

Borough*, No. CV 25-155, 2025 WL 874777, at *3 (E.D. Pa. Mar. 20, 2025) (citing

*City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981).  Therefore, Doe's

claim for punitive damages based on CVSD's *Monell* liability will be dismissed

with prejudice.

Defendants' motion to dismiss Count II as to CVSD will be denied.

Therefore, Doe's Section 1983 claim against CVSD and Blanchard, Rawls,

Rausch, and Shaffner in their individual capacities remain.

### C. False imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress claims

Counts III through VII of the amended complaint assert a series of tort

claims against CVSD and the individual defendants.  (Doc. 19, ¶¶ 128–69.)  Count

III raises a false imprisonment claim against CVSD and Froelich, *id.* ¶¶ 128–35,

Count IV raises a common law assault claim against CVSD and Froelich, *id.* ¶¶

136–47, Count V raises a common law battery claim against CVSD and Froelich,

*id.* ¶¶ 148–57, Count VI raises an intentional infliction of emotional distress claim

against all Defendants, *id.* ¶¶ 158–62, and Count VII raises a negligent infliction of

emotional distress claim against all Defendants, *id.* ¶¶ 163–69.  The court addresses each Defendant, the claims raised against them, and their immunity arguments in turn.

### 1. CVSD

Doe names CVSD as a defendant to each of the claims asserted in Counts III through VII.  (Doc. 19, ¶¶ 128–69.)  Defendants argue that CVSD is immune to each of these claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§ 8541–8542.  (Doc. 27, pp. 28–30.)

A party may raise an affirmative defense, like immunity, at the motion to dismiss stage if the defense "is apparent on the face of the complaint."  *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Ball v. Famiglio*, 726 F.3d 448, 459 n. 16 (3d Cir.2013)).  The Pennsylvania Subdivision Tort Claims Act ("PSTCA") provides immunity to "local agencies" for "any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. Ann. § 8541.

The PSTCA provides an exception to this immunity when two specific conditions are met.  First, a party may recover damages from a local agency only when the damages "would be recoverable under common law or a statute creating a cause of action if the injury" were caused by a person who could not claim

PSTCA or official immunity.  *Id.* § 8542(a)(1).  Second, the injury must be "caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to" nine specific categories listed in the statute."  *Id.* § 8542(a)(2).  Those nine categories are: (1) vehicle liability, (2) care, custody, or control of personal property, (3) real property, (4) trees, traffic controls, and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody, or control of animals, and (9) sexual abuse.  *Id.* § 8542(b).  An individual may not recover damages from a local agency for employee actions that qualify as a "crime, actual fraud, actual malice, or willful misconduct," because these are not "negligent acts."  *Id.* § 8542(a)(2).  "Otherwise stated, the term willful misconduct is synonymous with the term intentional tort."  *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh,* 641 A.2d 289, 293 (1994)) (internal quotation marks omitted); *Doe v. Williamsport Area Sch. Dist.*, No. 4:22-CV-01387, 2023 WL 3136409, at *13 (M.D. Pa. Apr. 27, 2023).  Therefore, Pennsylvania courts recognize that:

> While local agencies cannot be held liable for intentional torts committed by their employees, a local agency may be liable for damages that are "(1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Act."

*West on behalf of S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 344 (Pa. Commw. Ct. 2024) (quoting *Gillingham v. Cnty. of Delaware*, 154 A.3d 875, 877–78 (Pa. Commw. Ct. 2017)).

Defendants argue that CVSD is immune to all of Doe's tort claims pursuant to the PSTCA.  (Doc. 27, p. 30.)  Doe contends that the court should refrain from evaluating Defendants' immunity claims before discovery.  (Doc. 35, pp. 10–11.)

The court finds that CVSD qualifies as a local agency.  *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 217 (M.D. Pa. 2016) (noting that school districts qualify as local agencies for the purpose of PSTCA immunity).  Therefore, the PSTCA grants it "broad tort immunity" that is only abrogated when a plaintiff seeks to recover damages accrued from specific negligent acts.  *Sanford*, 456 F.3d at 315.  Doe's false imprisonment, common law assault and battery, and intentional infliction of emotional distress claims seek to hold CVSD liable for the alleged intentional torts of its employees.  (*See* Doc. 19, ¶¶ 128–62).  "[L]ocal agencies cannot be held liable for the intentional torts of their employees" because a local agency's PSTCA immunity is only abrogated for negligent acts.  *West on behalf of S.W.*, 327 A.3d at 344; *see also Rogers v. Pocono Mountain Sch. Dist.*, No. 3:21-CV-02072, 2023 WL 4377071, at *9 (M.D. Pa. July 6, 2023) ("Lesoine, an employee of the School District who allegedly engaged in willful misconduct, could be individually liable under the PSTCA, but that liability would not exten[d]

41

to the local agency employing him, the School District.") (citing *B.D. by & through B.D. v. Cornwall Lebanon Sch. Dist.*, No. 1:20-CV-01944, 2021 WL 1253522, at *19 (M.D. Pa. Apr. 5, 2021). Therefore, the court will dismiss Counts III, IV, V, and VI as to CVSD with prejudice.

Doe's negligent infliction of emotional distress ("NIED") claim does not raise an intentional tort claim. (Doc. 19, ¶¶ 163–69.) But neither does it allege or argue that CVSD employees committed any negligent acts related to the nine categories listed in the PSTCA. 42 Pa. Cons. Stat. Ann. § 8542(b); *see Willauer v. Chester Cnty. Intermediate Unit*, No. CV 23-3759, 2025 WL 2377680, at *10 (E.D. Pa. Aug. 14, 2025) (examining a plaintiff's negligence claim against a local agency employee where the plaintiff alleged that the "real property exception" to PSTCA immunity applied). Therefore, the court will dismiss Count VII with prejudice as to CVSD.

### 2. Froelich[12]

Doe raises false imprisonment, common-law assault and battery, intentional infliction of emotional distress ("IIED"), and NIED claims against Froelich. (Doc. 19, ¶¶ 128–169.) These claims arise out of an incident in which Doe alleges that Froelich physically restrained John Doe 1. (*Id.* ¶ 87(h).) Defendants argue that the

---

[12] The court assumes that Doe raises her state-law tort claims against each of the individual defendants in their individual or personal capacities.

PSTCA shields Froelich from Doe's intentional tort claims, or in the alternative, that Doe fails to allege facts sufficient to establish the elements of each claim. (Doc. 27, pp. 28–39; Doc. 36, pp. 9–11.)

Pennsylvania law extends immunity to local agency employees.  "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency . . . ."  42 Pa Cons. Stat. Ann. § 8545.  Therefore, like their local agency employer, an employee may only be liable for negligent acts committed within the scope of their duties and relate to the nine categories of acts listed in § 8542(b).  Doe does not allege or argue that Froelich was acting outside the scope of his official duties as the assistant director of public safety at CVHS when he restrained John Doe 1, and given that Froelich assumedly restrained Doe at school, the court infers that he was acting within the scope of his official duty in that role to maintain student safety. (*See* Doc. 19, ¶¶ 29, 87(h).)  Moreover, Doe alleges that Froelich acted as CVSD's agent when restraining John Doe 1.  (*Id.* ¶¶ 146, 155.)

Although Doe alleges, within her NIED claim, that every individual defendant acted willfully and maliciously, that claim is undercut by her assertion of a negligent infliction of emotional distress claim.  (*Id.* ¶ 168.)  And, as the court recognized above, Doe's allegations regarding Froelich's averred negligent

infliction of emotional distress do not fit into any of the nine categories of acts listed in the PSTCA. 42 Pa. Cons. Stat. Ann. § 8542(b); (Doc. 19, ¶¶ 87(h), 163–169.) Therefore, the court will dismiss Doe's NIED claim, Count VII, as to Froelich with prejudice on the basis of PSTCA immunity.

However, when a plaintiff sues a local agency employee "on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," the official immunity that is coextensive with that of the employing agency does not apply. 42 Pa Cons. Stat. Ann. § 8550. Asserting an intentional tort is equivalent to alleging willful misconduct. *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 277 (E.D. Pa. 2007) (finding that immunity did not apply when plaintiff alleged that defendants acted "willfully and maliciously"); *Gorrio v. Briggs*, No. 1:23-CV-01697, 2025 WL 2177826, at *13 (M.D. Pa. July 31, 2025) (On the other hand, at least on their face, the PSTCA would not bar Gorrio's state-law claims for false imprisonment, IIED, false/fraudulent misrepresentation, and assault and battery because they are intentional torts.") (collecting cases). Therefore, if Doe properly alleges intentional tort claims against Froelich, Froelich's immunity as a local agency employee will not bar those claims.

Turning to the merits of Doe's tort claims, the court finds that Doe has adequately pleaded claims of false imprisonment and common-law assault and battery against Froelich.  "In Pennsylvania, false imprisonment is the 'unlawful detention of another person.'" *Benjamin v. Cargill Meat Sols.*, No. 3:20-CV-1824, 2021 WL 11108679, at *4 (M.D. Pa. June 28, 2021), *report and recommendation adopted*, No. 3:20-CV-1824, 2021 WL 11108680 (M.D. Pa. July 20, 2021) (quoting *Pope v. Rostraver Shop 'N Save*, 389 F. App'x 151, 152 (3d Cir. 2010)); s*ee Renk*, 641 A.2d at 293.  To plead a prima facie case of false imprisonment, the plaintiff must allege that "(1) the defendant acted with the intent to confine the plaintiff within fixed boundaries; (2) the defendant's act directly or indirectly confined the plaintiff; and (3) plaintiff was aware of the confinement or harmed by it."  *Pope*, 389 F. App'x. at 152 (citing *Gagliardi v. Lynn*, 285 A.2d 109, 111 n. 2 (1971); *Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 620 (E.D. Pa. 2004); *Caswell v. BJ's Wholesale Co.*, 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998); *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 540–541 (E.D. Pa. 1982); *Restatement (Second) of Torts* § 35).

Defendants argue that Doe fails to state a false imprisonment claim against Froelich because Froelich had "probable cause" to restrain John Doe 1 and the restraint of an individual cannot be unlawful if it is supported by probable cause. (Doc. 27, pp. 31–33.)  Doe alleges that Froelich "knowingly and intentionally

restrained and confined John Doe 1" by placing him in a "physical restraint that

was unnecessary, criminal, and with no legal justification or authority to use."

(Doc. 19, ¶¶ 129–30.)  Doe adequately pleads the first and second elements by

alleging that Froelich acted intentionally to physically confine John Doe 1 to a

fixed area.  (*See id.*)  It is reasonable to infer that John Doe 1 knew of this

confinement because he was being physically restrained by an adult.  (*Id.* ¶¶ 87(h),

129–30.)  And even if Defendants' probable cause argument applied in this

context, Doe specifically alleges that Froelich detained John Doe 1 only because he

was "Black and upset."  (*Id.* ¶ 87(h).)  Therefore, Doe has adequately pleaded a

claim of false imprisonment against Froelich, and the court will deny Defendants'

motion to dismiss Count III against Froelich.[13]

Counts IV and V raise common law assault and battery claims against

Froelich.  (Doc. 19, ¶¶ 136–157.)  In Pennsylvania, "the common law torts of

assault and battery are consolidated . . . ."  *Vicky M. v. Ne. Educ. Intermediate Unit*

---

[13] Defendants argue that the court should dismiss Doe's claim for punitive damages against
Froelich because "Defendants here are a municipality and municipal employees acting within the
scope of their employment . . . ."  (Doc. 27, p. 42.)  However, in *Vicky M. v. Ne. Educ.
Intermediate Unit 19*, a case Defendants cite, Doc. 27, p. 33, the court held that several
defendants did not qualify for PSTCA immunity because of the willful misconduct exception and
later refused to dismiss a claim for punitive damages against those same defendants. *Vicky M. v.
Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 460–65 (M.D. Pa. 2007), *on
reconsideration*, No. CIV.A. 3:06-CV-01898, 2007 WL 2844428 (M.D. Pa. Sept. 26, 2007).
Therefore, the court will do the same here and deny Defendants' motion to dismiss Doe's claim
for punitive damages at this stage.

*19*, 486 F. Supp. 2d 437, 457 (M.D. Pa. 2007), *on reconsideration*, No. CIV.A. 3:06-CV-01898, 2007 WL 2844428 (M.D. Pa. Sept. 26, 2007) (citing *Commonwealth v. Jackson*, 907 A.2d 540, 545 (Pa. Super. Ct. 2006)).  Therefore, "assault is an intentional attempt by force to do an injury upon the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Betz v. Satteson*, 715 Fed. Appx. 213, 217 (3d Cir. 2017) (quoting *Renk*, 641 A.2d at 293). "An assault requires both the actor's intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension." *Humphries v. Barber*, No. 4:20-CV-00064, 2024 WL 290269, at *6 (M.D. Pa. Jan. 25, 2024) (quoting *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 365–66 (E.D. Pa. 2006)).  "Battery is defined as an intentional harmful or offensive contact with the person of another," and "[t]he fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established." *Id.* (quoting *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017).)

Defendants argue that "based upon the facts as alleged, and excluding any asserted legal conclusions, there are no reasonable inferences that can be drawn to support the allegation that Defendant Froelich intentionally, knowingly or recklessly attempted to cause bodily injury to John Doe 1."  (Doc. 27, p. 35 (citing

Doc 19, ¶ 87(h)).  Doe alleges that "[i]n moving aggressively toward John Doe 1 to place him in an unnecessary and criminal physical restraint, Froelich acted with the intent to cause fear and harm" and that Froelich's actions "did put John Doe 1 in fear of imminent and severe bodily harm."  (Doc. 19, ¶¶ 139–40.)  Moreover, Doe alleges that Froelich "did harmfully and offensively contact John Doe 1 by physically restraining him against his will" and "made harmful and offensive contact with John Doe 1."  (*Id.* ¶¶ 149–50.)  Therefore, the court finds that Doe has adequately pleaded her claims of assault and battery against Froelich and will deny Defendants' motion to dismiss Counts IV and V as to Froelich.

Finally, Count VI raises an intentional infliction of emotional distress ("IIED") claim against Froelich.  (*Id.* ¶¶ 158–62.)  To successfully plead an IIED claim, Doe must allege that the defendant's conduct was "(1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." *Canaan*, 760 F. Supp. 3d at 337 (quoting *Hitchens v. Cnty. of Montgomery*, No. CIV.A. 00-4282, 2002 WL 253939, at *10 (E.D. Pa. Feb. 20, 2002).)  "[T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

Defendants argue that Doe's IIED claim fails because "no such extreme and outrageous facts are alleged to exist in this case." (Doc. 27, p. 37.) Doe alleges that, in intentionally restraining John Doe 1 merely because he was "Black and upset," Froelich acted in an "extreme and outrageous manner" that caused John Doe 1 severe emotional distress, as demonstrated by the various mental and physical health conditions he allegedly suffered. (Doc. 19, ¶¶ 87(h), 98–101, 158–60.) Therefore, the court declines, at this stage, to dismiss Doe's IIED claim against Froelich, and will deny the motion to dismiss Count VI as to Froelich.

### 3. Rawls

The amended complaint raises claims of IIED and NIED against Rawls. (Doc. 19, ¶¶ 158–69.) Defendants argue that Rawls is entitled to PSTCA immunity, so both claims should be dismissed. (Doc. 27, p. 28.) In the alternative, they argue that Doe does not plead facts sufficient to state NIED and IIED claims against Rawls. (*Id.* at 35–39.)

Rawls is a CVSD employee, and as the court explained above, CVSD is a local agency. (Doc. 19, ¶ 23); *see Beam*, 165 F. Supp. 3d at 217. Therefore, Rawls is entitled to PSTCA immunity to the same extent as Froelich, and he may only be liable for negligent acts committed within the scope of his duties and related to the nine categories of acts listed in the PSTCA. 42 Pa. Cons. Stat. Ann. §§ 8542(b), 8545. He may also be liable for an act that injures another person and

"constitute[es] a crime, actual fraud, actual malice or willful misconduct." *Id.* §
8550.

In her amended complaint and, specifically, her NIED claim, Doe does not
allege that Rawls acted outside the scope of his duties. Instead, the allegations in
the complaint about Rawls relate to his decisions and alleged deliberate
indifference to instances of harassment as the principal of CVHS. (*See* Doc. 19,
¶¶ 59(e), 66.) Although Doe alleges, within her NIED claim, that every individual
defendant acted willfully and maliciously, that claim is undercut by her assertion of
a negligent infliction of emotional distress claim. (*Id.* ¶ 168.) Therefore, PSTCA
immunity shields Rawls from Doe's NIED claim unless his allegedly negligent
acts relate to one of the nine categories listed in the PSTCA. 42 Pa. Cons. Stat.
Ann. § 8542(b). Doe does not allege that Rawls took any action related to
vehicles, the care, custody, or control of personal property, real property, trees,
traffic controls, street lighting, utility service facilities, streets, sidewalks, the care,
custody, or control of animals, or sexual abuse. *Id.* § 8542(b). Therefore, PSTCA
immunity applies, and Doe's NIED claim against Rawls will be dismissed with
prejudice.

Because Doe's IIED claim alleges that Rawls committed an intentional tort,
the willful misconduct exception to PSTCA immunity applies. *Sanford* 456 F.3d
at 315. To properly plead that claim, Doe must allege that Rawls acted in a way

that was "(1) extreme and outrageous; (2) intentional or reckless; and (3) caused

severe emotional distress." *Canaan*, 760 F. Supp. 3d at 337 (quoting *Hitchens*,

2002 WL 253939, at *10).  Doe's complaint lacks specific allegations of Rawls's

extreme or outrageous conduct that could support an IIED claim.  Apart from her

allegations that Rawls, as the principal of CVHS, was deliberately indifferent to

pervasive racial harassment and discrimination, it does not allege that he took any

specific, direct action relating to John Doe 1 or John Doe 2, let alone an action that

could be described as extreme or outrageous.  (*See* Doc. 19, ¶ 59(e) (describing

events that have occurred since Rawls became principal, but not alleging that

Rawls took specific or outrageous action).)  Therefore, the court finds that the

amended complaint does not sufficiently allege that Rawls acted in a way that is

extreme or outrageous.  But because the court cannot say, at this stage, that

amendment would be futile, it will dismiss Doe's IIED claim against him without

prejudice.  *Montanez v. Price*, 154 F.4th 127, 151 (3d Cir. 2025) ("[L]eave to

amend should be liberally given unless amendment would be inequitable or

futile.") (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *Phillips v. Cnty.

of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)).

### 4.  Blanchard, Rausch, and Shaffner

The amended complaint raises IIED and NIED claims against Blanchard,

Rausch, and Shaffner.  (Doc. 19, ¶¶ 158–69.)  Defendants argue that Blanchard,

Rausch, and Shaffner are immune to these claims pursuant to the PSTCA and because they maintain absolute immunity from state-law tort claims as "high public officials." (Doc. 27, pp. 27–30, 41.) Without further briefing, it is not clear to the court that Rausch and Shaffner, as members of the CVSD school board, are entitled to PSTCA immunity. *See Muhammad v. City of Lewisburg, Pa.*, No. 4:21-CV-0284, 2022 WL 779405, at *4 (M.D. Pa. Jan. 20, 2022), *report and recommendation adopted*, No. 4:21-CV-0284, 2022 WL 774878 (M.D. Pa. Feb. 16, 2022) (recognizing generally that the PSTCA applies to "a member of a governing body" but not addressing the role of a school board member, specifically) (citing 42 Pa Cons. Stat. Ann. §8501). However, Blanchard, in his role as CVSD superintendent, and Rausch and Shaffner, in their roles as members of the school board, are entitled to high public official immunity, so the court will dismiss the tort claims against them with prejudice.

"In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (2017). "Thus, absolute immunity applies if (1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his

authority." *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 561 (W.D. Pa. 2019) (citing *Mollan v. Lindner*, 677 A.2d 1194, 1199 (1996)). High public official immunity is determined on a case-by-case basis, and the court considers the official's duties, the importance of the official's office, and whether that official's duties involve policymaking. *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 n.10 (2017) (citing *Montgomery v. City of Phila.*, 140 A.2d 100, 105 (1958)).

The court finds that Blanchard is a high public official. Several courts in this circuit have held that school district superintendents qualify as high public officials. *Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 563 (E.D. Pa. 2013); *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000); *Brazil v. Scranton Sch. Bd.*, No. 3:22-CV-01514, 2023 WL 5916470, at *4 (M.D. Pa. Sept. 11, 2023). Moreover, Doe's amended complaint alleges that, as superintendent of CVSD, Blanchard is responsible for "making and enforcing CVSD's policies and procedures, whether written or unwritten . . . ." (Doc. 19, ¶ 21.) *See Durham v. McElynn*, 772 A.2d 68, 69 (2001) (recognizing the connection between policymaking authority and status as a high public official). Therefore, the court finds that Blanchard qualifies as a high public official.

Next, the court must determine whether Doe alleges that Blanchard acted outside the scope of his official duties in committing IIED or NIED. *See Caristo*,

370 F. Supp. 3d at 561.  The court finds that she does not.  Broadly, Doe's

allegations relate to Blanchard's decisions as superintendent of CVSD and how

those decisions allegedly created a racially hostile environment that harmed John

Doe 1 and John Doe 2.  (Doc. 19, ¶¶ 158–69.)  Throughout the complaint, Doe

notes that "Blanchard [and others] had affirmative duties to prevent a racially

hostile environment within CVSD and CVHS but failed to do so . . . ." (*Id.* ¶¶ 113–

14.)  The specific allegations in the amended complaint concerning Blanchard refer

only to statements he made about CVSD or his actions as a school district

administrator.  (*See Id.* ¶¶ 61(j)–66, 113.)  Therefore, the court finds that

Defendants have shown that, based on the facts alleged in the amended complaint,

Blanchard qualifies as a high public official and is immune to Doe's IIED and

NIED claims.

The same analysis applies to Rausch and Shaffner as school board members.

A "large majority" of district courts in the Third Circuit have held that school

board members are high public officials because they are "entrusted with the

policymaking role for a school district." *Caristo*, 370 F. Supp. 3d at 564 (quoting

*Zugarek*, 214 F. Supp. 2d at 479) (analyzing the authority granted to Pennsylvania

school boards by Pennsylvania statutes).  Doe alleges that CVSD school board

members are responsible for "ensuring that CVHS adheres to CVSD's policies and

procedures . . . ." (Doc. 19, ¶¶ 26, 28.)  She also alleges that Rausch and Shaffner

exercise control over the policies of the school district. (*Id.* ¶ 46.)  Therefore, the court finds that, based on the facts alleged in the amended complaint and their status as school board members, Rausch and Shaffner are high public officials.

Doe's complaint does not allege that Rausch and Shaffner acted outside the scope of their official duties as school board members when they allegedly acted intentionally or negligently and caused John Doe 1 and John Doe 2 emotional distress.  The amended complaint's specific allegations about Rausch and Shaffner refer to their actions, decisions, and alleged indifference in their role as members of the school board.  (*See id.* ¶ 66 ("Rausch and Shaffner have knowingly and/or indifferently allowed the racially hostile environment at CVSD and CVHS, respectively, to continue unabated through each of their actions and omissions in line with CVSD's informal and unwritten policies, practices, and customs . . . ); *id.* ¶¶ 59(a), (g) (highlighting actions and statements that took place at school board meetings).)  Therefore, the court finds that both Rausch and Shaffner are entitled to high public official immunity.

In sum, the court finds that Blanchard, Rausch, and Shaffner qualify as high public officials who the complaint alleges acted within the scope of their official duties, and they are therefore immune to Doe's state tort law claims.  Thus, the court will grant Defendants' motion to dismiss Counts VI and VII as to those three

defendants and will dismiss the IIED and NIED claims against them with prejudice.

### D. Motion to strike

Defendants argue that the following paragraphs of the amended complaint are "immaterial, impertinent, and scandalous in nature": 46, 47, 48, 49, 50, 52, 59(a)–(k), 62, 63, 64, 65, and 93. (Doc. 27, pp. 43–45.) Defendants bear the burden of demonstrating that the challenged paragraphs of the complaint are, in fact, immaterial, impertinent, and scandalous in nature and should therefore be stricken from the amended complaint. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019.) Plaintiff argues that the motion to strike should be denied because "[s]uch relief is considered drastic and should only be available when the material could have no possible bearing on the outcome of a case . . . ." (Doc. 35, p. 4.) The court addresses each disputed paragraph of the complaint in turn.

Paragraphs 46 through 50 allege the following facts:

One thing is perfectly clear, the toxic rot of racial discrimination, bigotry, bullying and harassing behaviors, and general intolerance in CVSD starts at the head with the Board, and in particular, Rausch and Shaffner who not only hold such beliefs but makes sure that CVSD, and its unwritten and informal policies, practices and customs, are molded in their image. (Doc 19, ¶ 46.) In fact, Shaffner has had de facto control over the Board and CVSD for decades, and his control has been absolute. (*Id.* ¶ 47.) Plaintiff believes that the other members of the Board, including Rausch, as well as CVSD's employees and personnel are forced to and agree to yield to Shaffner's individual whims, or they

are ostracized and/or pushed out. (*Id.* ¶ 48.)  During his time on the Board, Rausch has ensured that CVSD adheres to his racist and bigoted ideals.  (*Id.* ¶ 49.)  During his decades on the Board, Shaffner has ensured that CVSD adheres to his racist and bigoted ideals.  (*Id.* ¶ 50.)

The court agrees with Defendants that paragraphs 49 and 50 are largely immaterial to Doe's claims, especially because they merely repeat the allegation contained in paragraph 46.  Therefore, the court will grant Defendants' motion to strike paragraphs 49 and 50 from the amended complaint.  However, paragraphs 46, 47, and 48 allege facts that could ultimately be relevant to Plaintiff's individual Section 1983 and *Monell* claims, given that they support a reasonable inference that the school board maintains a custom of permitting racial harassment and attempt to describe which specific policymakers implement or support that custom.  *See* (Doc. 19, ¶ 125 (alleging that CVSD had "unwritten policies, practices, and customs" that led to constitutional violations))*; Perez v. Lebron*, No. 5:20-CV-04331-JMG, 2021 WL 2255852, at *5 (E.D. Pa. June 3, 2021) (denying a motion to strike allegations relevant to the plaintiff's failure-to-train *Monell* claim).  Thus, the court denies Defendants' motion to strike paragraphs 46, 47, and 48.

Paragraph 52 alleges that "CVSD has long been known and referred to by both district residents and surrounding community members as the 'White Shore,' which is a play on the location of Cumberland Valley being on the western shore of the Susquehanna River."  (*Id.* ¶ 52.)  The court agrees that this allegation is both immaterial and impertinent because it offers no recognizable support to Doe's Title

VI, Section 1983, or tort claims. None of these claims are based on public perception of a school district's reputation. Therefore, the court will grant Defendants' motion to strike paragraph 52.

Paragraph 59(a)–(k) contains a list of allegations related to instances of harassment or discrimination that did not involve John Doe 1 and John Doe 2. To plead causation in a *Monell* claim, a plaintiff must allege that a municipal entity "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz*, 915 F.2d at 850) (cleaned up). Because at least some of the instances described in paragraph 59 allege previous instances of racial harassment and deliberate indifference, and because Defendants have not addressed these allegations individually, the court finds that Defendants have not met their burden to prove that the entirety of paragraph 59 is immaterial, impertinent, or scandalous. (Doc. 19 ¶ 59(a)–(k).) However, Defendants specifically address a footnote within paragraph 59 that contains allegations about Rawls's hiring and an incident that occurred at a different school district where he previously worked. (*Id.* ¶ 59(e) n.2.) Specifically, the footnote alleges:

> Rawls is an African American. However, it is believed that he was only hired to shield CVSD and the Board from allegations of racism and bigotry. In fact, Rawls has a history of questionably flexible ethics, even the kind that would allow a racially hostile environment and bullying to continue unabated in his school. For instance, in 2016, Rawls' wife, while he was a vice-principal at a different school district,

instigated a physical altercation with a student while on a school bus. Rawls, through his position in that school's administration, intentionally withheld from his own school board the video of the incident in an effort to cover-up of the incident. Eventually, after that school board expended $200,000 to $250,000 of taxpayer funds in litigation, they were able to obtain the video and released a copy of it to the public that was so heavily redacted it was impossible to determine what occurred. There can be little doubt that Rawls learned from that incident that the "more blur, the better," in allowing and perpetuating the heinous environment at CVHS.

*Id.*  The court finds this footnote, specifically, to be both scandalous and immaterial.  Doe's suggestion that Rawls was hired specifically because he is African American is highly offensive, and the events that allegedly occurred when he was a vice principal at a different school district are irrelevant to Doe's claims regarding CVSD.  Therefore, the court will grant Defendants' motion to strike footnote 2 to paragraph 59(e) of the amended complaint.

Paragraphs 62, 63, 64, and 65 contain the following allegations:

However, Blanchard was selected through a "kangaroo court" setting that Shaffner set into motion and solely controlled and conducted and Rausch tacitly condoned and/or openly approved.  (Doc. 19, ¶ 62.) Shaffner either knew that Blanchard's demeanor under Dr. Christopher was a façade or that he could coerce and bully Blanchard into perpetuating Shaffner's individual agendas of racism, bigotry, harassment, discrimination, and he and his family's efforts to financial gain.  (*Id.* ¶ 63.)  In ensuring Blanchard's selection as Superintendent, Shaffner ensured that he would have, or could create, a warrior for Shaffner's world view and CVSD's unwritten and informal policies instead of one who is concerned with his actual obligations, which is to ensure a safe learning environment for CVSD's students.  (*Id.* ¶ 64.) Since being selected as Superintendent of CVSD, Blanchard has been openly hostile, pugnacious, and gaslighting to anyone who raises any concerns as to the racially hostile environment and bullying within

> CVSD's schools, even though he was part of the previous
> administration that fully admitted CVSD had a problem with racial
> intolerance and bullying. (*Id.* ¶ 65.)

The court agrees that Doe's allegations regarding Blanchard's selection as

superintendent are simply immaterial to Doe's claims in that it does not allege or

contextualize allegations of indifference to racial harassment or other actions that

could form the basis for Doe's claims. Therefore, the court will grant Defendants'

motion to strike paragraphs 62, 63, and 64. However, the court finds that the

allegations contained in paragraph 65 are potentially relevant to Doe's

constitutional claims, which allege deliberate indifference to reports of racial

harassment. (*See* Doc. 19, ¶¶ 103–27.) Therefore, the court will deny Defendants'

motion to strike paragraph 65 of the amended complaint.

Finally, Defendants move to strike paragraph 93 of the amended complaint,

which refers to John Doe 2's classmate touching his hair: "For an African

American, that simple act is one of dehumanization and objectification that

harkens back to a history of Black people being treated as an object of curiosity

rather than as a human being." (*Id.* ¶ 93.) The court finds that this allegation is not

immaterial or impertinent as it contextualizes the alleged harassment that John Doe

2 suffered, and it is not scandalous. Therefore, the court denies Defendants'

motion to strike paragraph 93 of the amended complaint.

In sum, the court will grant Defendants' motion to strike paragraphs 49, 50, 52, 59(e) n.2, 62, 63, and 64.  It will deny Defendants' motion to strike paragraphs 46, 47, 48, 59(a)–(k), 65, and 93.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss and to strike, Doc. 23, is granted in part and denied in part.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 5, 2026